# Exhibit A

ELECTRONICALLY FILED
6/17/2025 8:30 AM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 25-2-05522-31

**SUPERIOR COURT OF THE STATE OF**

**WASHINGTON FOR THE COUNTY OF SNOHOMISH**

| | |
|---|---|
| BRICE WILKERSON, an individual; and MARCELA TASLIM, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>MENARDS MOVING & STORAGE LLC, a Florida limited liability company; INSURMEDIX INC., a Delaware corporation; PRIME HOLDINGS INSURANCE SERVICES, INC. dba PRIME INSURANCE COMPANY, an Illinois corporation; GUARDWIZE INSURANCE AGENCY INC., a Florida corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 25-2-05522-31<br><br>**COMPLAINT FOR:**<br><br>**1. BREACH OF CONTRACT;**<br>**2. NEGLIGENCE;**<br>**3. INSURANCE BAD FAITH;**<br>**4. UNFAIR BUSINESS PRACTICES;**<br>**5. FRAUDULENT MISREPRESENTATION;**<br>**6. NEGLIGENT MISREPRESENTATION;**<br>**7. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; AND**<br>**8. ACTS OR OMISSIONS IN VIOLATION OF 49 U.S. CODE PART B**<br><br>Judge:<br>Dept.: |

Plaintiff BRICE WILKERSON alleges as follows:

**THE PARTIES**

1. Plaintiff BRICE WILKERSON ("Wilkerson") is an individual who resides in Snohomish County, Washington.


ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S, Tacoma, WA 98402

2. Plaintiff MARCELA TASLIM ("Taslim") is an individual who resides in Snohomish County, Washington.

3. Upon information and belief, Defendant MENARDS MOVING & STORAGE LLC ("Menards") is a limited liability company organized in Florida with its principal place of business in Greenacres, Florida, County of Palm Beach. Menards is a broker of transportation by motor vehicle.

4. Upon information and belief, Defendant INSURMEDIX INC. ("InsurMedix") is a corporation organized and incorporated in Delaware with its principal place of business in Dover, County of Kent, Delaware. Upon information and belief, InsurMedix is an insurance broker. Wilkerson acquired a policy insuring the shipment of his and his wife's property through InsurMedix.

5. Upon information and belief, Defendant PRIME HOLDINGS INSURANCE SERVICES, INC. dba PRIME INSURANCE COMPANY ("Prime") is a corporation organized and incorporated in the state of Illinois with its principal place of business in Sandy, County of Salt Lake, Utah. Upon information and belief, Prime is an insurance provider. Wilkerson acquired a policy insuring the transportation of his and his wife's property with Prime.

6. Upon Information and belief, Defendant GUARDWIZE INSURANCE AGENCY ("Guardwize") is a corporation organized under the laws of the state of Florida with its principal place of business in Coral Springs, County of Broward, Florida. Upon information and belief, Guardwize is the authorized claims-handling agent of InsurMedix. Plaintiff made a claim on his policy insuring the transportation of his and his wife's property through Guardwize.

7. The true names and capacities, whether individual, corporate, or otherwise, of other defendants are at this time unknown to plaintiff, who therefore sues such defendants as DOES 1 through 20. Plaintiffs believe that defendants designated as DOES 1 through 20 are in some manner legally responsible for the events and occurrences referred to in this complaint and


ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S. Tacoma, WA 98402

for the injuries and damage caused to plaintiffs. Plaintiffs will amend this complaint to show their true names and capacities when ascertained.

## JURISDICTION AND VENUE

8. This court has jurisdiction over of the subject matter of this action because plaintiffs seek damages from defendants in an amount exceeding the minimum jurisdictional amount for this court as provided in Rev. Code Wash. § 2.08.010.

9. This court has jurisdiction over Menards because it does business in the state within the meaning of Rev. Code Wash. § 4.28.080 by brokering the transportation of household goods into the state.

10. This court has jurisdiction over Prime because it does business in the state within the meaning of Rev. Code Wash. § 4.28.080 by insuring the transportation of household goods into the state.

11. This court has jurisdiction over InsurMedix because it does business in the state within the meaning of Rev. Code Wash. § 4.28.080 by insuring the transportation of household goods into the state.

12. This court has jurisdiction over Guardwize because it does business in the state within the meaning of Rev. Code Wash. § 4.28.080 by insuring the transportation of household goods into the state.

13. Snohomish County, in which this court is located, is a proper venue for this action under Rev. Code Wash. § 4.12.020 because this is the county in which the cause of action or some part thereof arose and under Wash. CR 82 because this is the county where plaintiffs reside.

## FACTUAL ALLEGATIONS

### a. Moving Plaintiff's Property to Washington

14. Until 2024, Wilkerson and Taslim (collectively, "Plaintiffs") lived in Baldwin, New York. Sometime in February 2024, Wilkerson relocated to Everett, Washington. Taslim

stayed in New York for a time before following Wilkerson to Washington. In preparation to move their household possessions to Washington, Plaintiffs shopped around for a moving company to transport their personal property to their new home. One such moving company Plaintiffs contacted was Menards.

15. On July 13, 2024, after discussing the move and Plaintiffs' inventory, Menards provided a binding estimate (the "Original Binding Estimate") at a total moving price not to exceed $7,563.91 for 930 cubic feet/6,510 pounds. The move was scheduled for July 18-19, 2024. Plaintiffs paid the deposit of $2,435.89 for the transportation of their property.

16. At the same time Plaintiffs made this deposit, they purchased an insurance policy (the "Policy") covering the move through InsurMedix. Apparently, InsurMedix was an insurance broker, not an insurer itself. Plaintiff's Policy was actually with Prime. The total premium for this policy was $511.00. The coverage limit was $15,415.00. Later, when Plaintiffs needed to make a claim on this Policy, Guardwize handled their claim. At all times, InsurMedix, Prime, and Guardwize (collectively, the "Insurance Defendants") acted in concert and/or as agents for one another in relation to the Policy so as to indistinguishable from one another.

17. On July 18, 2024, Plaintiffs spoke with Menards' quality control department by telephone. Based on updates to Plaintiffs' inventory, Menards advised Plaintiffs that the volume required for the move would need to increase to about 1,200 cubic feet. Menards provided Plaintiffs with a revised binding estimate (the "First Revised Binding Estimate"). Plaintiffs paid an additional $2,000.00 to their deposit in response to the increased cost of the First Revised Binding Estimate. During this call with Menards, Plaintiffs notified Menards they had a set of fully assembled collectible LEGO display pieces that required special care in moving.

18. On July 19, 2024, a household goods motor carrier called Swift Moving Services, LLC ("Swift") arrived to conduct the move. Swift insisted the First Revised Binding Estimate had understated the volume of Plaintiffs' inventory and calculated the volume at 2,200 cubic feet for a moving cost of $14,275.11, nearly double the volume and price quoted by Menards in the


ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S, Tacoma, WA 98402

First Revise Binding Estimate. Plaintiffs spent hours trying to contact Menards' customer service department, which was unresponsive. After receiving a call from their dispatcher, the Swift movers left. Menards promised Plaintiffs a different mover would be sent to complete the move who would not "play games."

19. Later the same day, Plaintiffs spoke with Menards' chief dispatcher, Maya. Plaintiffs informed Maya they wanted to rescind the First Amended Binding Estimate and receive a full refund of their deposit. Maya refused a rescission and refund citing language from the First Revised Binding Estimate which stated Menards could re-attempt the move within 12 months. To remove any ambiguity regarding the volume of his inventory, Plaintiffs offered to take a video inventory of their property. Maya accepted this solution and promised to transmit the video inventory to the next movers Menards sent so there would be no repeated confusion regarding the volume of Plaintiffs' inventory.

20. During this conversation, Maya made several promises on which Plaintiffs relied. She promised Plaintiffs that Menards would reimburse them for a roundtrip flight from Seattle to New York, which Wilkerson would have to take to facilitate the move on a later date. She promised Menards would waive some of its commission to get a better moving company. She promised that the scheduled move would be a flat rate to fill one full truck. And she promised Menards would hire a moving company other than Swift.

21. Following this call, Plaintiffs took a 24-minute video showing a detailed inventory of the property to be moved (the "Video Inventory"). Plaintiffs sent the Video Inventory to Menards.

22. On July 19, 2024, Plaintiffs also reached out to InsurMedix to have the dates of coverage changed. InsurMedix updated the policy to cover a new move date of August 6, 2024. The total premium on the Policy as updated was $852.32 and the coverage limit was $24,695.00. A true and accurate copy of the Policy as updated is attached as Exhibit A.

23. On July 22, 2024, Plaintiffs received an updated quote from Menards at $8,990.84 for 1,195 cubic feet and 8,365 pounds (the "Second Revised Binding Estimate").

24. On or about July 26, 2024, after thorough negotiations, Menards sent a new binding estimate (the "Final Revised Binding Estimate"). A true and accurate copy of the Final Revised Binding Estimate is attached as Exhibit B. The Final Revised Binding Estimate reflected a total moving estimate not to exceed $10,395.00 for an estimated volume of 1,600 cubic feet to fill one truck. The Final Revised Binding Estimate also reflected $1,600.00 for a full "white glove service," the cost of which was increased to ensure the careful, in-tact transport of Plaintiffs' fully assembled LEGO display collection. The move date was set for August 5-6, 2024. The Final Revised Binding Estimate initially misstated the deposit Plaintiffs had already paid as $3,785.89. Only after Plaintiffs pointed this out was the amount corrected to $4,435.89.

25. On July 29, 2024, Wilkerson booked a roundtrip flight from Seattle to New York, and on August 4, 2024, Wilkerson flew to New York to facilitate the move. He paid for airport parking.

26. On August 6, 2024, despite Menard's promise it would send a more competent carrier, the carrier that arrived was once again Swift. Swift had been given an incorrect version of the Final Revised Binding Estimate showing that Plaintiffs had only paid a $3,785.89 deposit. Only after Plaintiffs showed Swift the correct Final Revised Binding Estimate did Swift accept that Plaintiffs had actually paid a $4,435.89 deposit. Nevertheless, instead of acceding to the Final Revised Binding Estimate, Swift once again made its own estimate. Swift provided Plaintiffs with a bill of lading (the "Bill of Lading") reflecting a total cost of $14,870.89 for 2,900 cubic feet of inventory. A true and accurate copy of the Bill of Lading is attached as Exhibit C. Swift stated it had never received Plaintiffs' Video Inventory. When Plaintiffs' requested Swift honor the Final Revised Binding Estimate, Swift refused and demanded Plaintiffs accept its Bill of Lading, which Plaintiffs did under protest. Swift did not provide



ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S, Tacoma, WA 98402

Plaintiffs with its U.S. Department of Transportation ("DOT") registration number(s) or motor carrier license number(s).

27. Swift did not arrive until 4:30 p.m., and did not arrive prepared for the move. Swift brough neither the boxes necessary to pack the inventory nor the tools needed to disassemble various pieces of furniture or other items. Swift, therefore, left to acquire boxes and tools. When packing finally began, Plaintiffs specifically reminded Swift that they had paid for the white glove packing service and asked Swift to take special care in packing their LEGO display pieces. Despite having paid for the white glove service, Plaintiffs had to help pack and load the inventory. At about 2:30 a.m. the following morning, Swift represented that the truck was full with about a third of Plaintiffs' possessions still not packed. Swift refused to move any further inventory, leaving furniture, consumer electronic products, and about 40 boxes unmoved. After Swift left, Wilkerson took an Uber to the airport and flew back to Washington.

28. On August 14, 2024, Wilkerson flew back to New York to help Taslim handle the property Swift refused to transport. Plaintiffs shipped most of the remaining inventory using UPS. To enable them to effectively ship the property, Plaintiffs rented a U-Haul truck. Plaintiffs were forced to donate or dispose of much of their remaining furniture, consumer electronics and other oversized items. Wilkerson lost wages from August to August 19, 2024, while he and Taslim dealt with their remaining property.

29. The property Plaintiffs shipped by UPS arrived between August 23 and August 26, 2024. Some of the property shipped never arrived. Other property that did arrive was damaged.

30. On August 29, 2024, Swift contacted Plaintiffs to inform him the truck with their property had arrived in Washington. Swift told Plaintiffs to expect delivery between September 1 and September 4, 2024. Plaintiffs requested delivery on September 3 or September 4, as they were currently out of town on a vacation.


ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S, Tacoma, WA 98402

31. On August 30, 2024, Menards contacted Plaintiffs to confirm delivery the following day. Plaintiffs informed Menards they had requested delivery on September 3 at the earliest. Menards disregarded Plaintiffs' earlier request to Swift and stated delivery on September 3 would incur a $750.00 fee. To avoid the fee, Plaintiffs cancelled their vacation and returned to Washington to receive the property on September 1, 2024, at no extra charge.

32. On September 1, 2024, Swift arrived to unload Plaintiffs' property. Swift sent only one mover, and Plaintiffs had to help unload their property, just as they had had to help load it. Not only did they have to help unload their own property, but they also had to help unload and reload another person's property, which had been loaded behind theirs. The boxes belonging to the other individual were labeled, but theirs were not. Before and while unloading the truck, Plaintiffs took photographs documenting the process. Upon unloading the truck, it became clear that a substantial amount of Plaintiffs' property was missing.

33. After unloading the truck, Swift refused to unpack Plaintiffs' property, stating they had only purchased the white glove packing service, not the white glove unpacking service. Swift instructed Wilkerson to give his signature on its driver's mobile phone. Plaintiffs were not informed what document Wilkerson was signing nor were Plaintiffs permitted to review the document. Wilkerson was merely shown the signature box and instructed to give his signature. This document turned out to be a descriptive inventory of Plaintiffs' property ("Descriptive Inventory"). Swift did not note on the Descriptive Inventory that a substantial amount of Plaintiffs' property was missing or damaged. Swift did not give Plaintiffs the opportunity to note in writing any missing, damaged, or destroyed items. Swift would not provide Plaintiffs the location of the warehouse used to store their property. Despite having not delivered all of Plaintiffs' property, Swift demanded payment in full.

34. Plaintiffs then hired a local crew to assist in unpacking the property. As their property was unpacked, Plaintiffs discovered a substantial portion of it had been damaged. In particular, their LEGO display pieces, which Plaintiffs had notified both Menards and Swift


ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S. Tacoma, WA 98402

required careful packing, had been shoved into boxes with no packing materials and with a set of legal textbooks crammed on top of them. During transportation, they had been ruined. Many of the pieces for these display pieces were found outside the boxes, scattered about the floor of the moving truck. Further, two urns holding the cremated remains of Plaintiffs' two pet guinea pigs were not properly packed, causing the ashes of Plaintiffs' pets to be scattered in the moving truck.

35. From September 2 through September 5, 2024, Wilkerson lost further wages as he attempted to account for his and his wife's missing and damaged property.

36. Upon information and belief, at the time Swift transported Plaintiffs' possessions, Swift's surety bond and insurance policy had lapsed and were not in effect.

**b. Plaintiff's Insurance Claims**

37. On September 1, 2024, Plaintiffs emailed InsurMedix, informing them that roughly a third of their property had gone missing during delivery and that there was substantial damage to what had been delivered. Plaintiffs notified InsurMedix they had left a voice message with InsurMedix's claims department informing InsurMedix they would be filing a claim. Plaintiffs' initial claim was their best estimate at the time they made it. As Plaintiffs discovered the full extent of the lost and damaged property, they updated their claim.

38. On September 4, 2024, a representative for Guardwize named Alfredo reached out to Plaintiffs requesting information on the items Plaintiffs wished to claim. Plaintiffs replied with a list of damaged items and a list of lost items. Plaintiffs also provided photographs of the damaged items as well as of the moving truck before and as it was being unloaded. These claims were made directly to Alfredo because InsurMedix's claims portal was not functioning properly.

39. On September 9, 2024, Plaintiffs sent Guardwize updated claim information, including itemized costs with supporting receipts and quotes. Plaintiffs sent a further claim update on September 13, 2024.



ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S, Tacoma, WA 98402

40. On September 18, 2024, responding to Plaintiffs' request for an update, Guardwize informed Plaintiffs it was still analyzing his claim and would keep them updated on its progress. However, a week later, after receiving no further updates, Plaintiffs emailed Guardwize and put Guardwize on notice that if no action was taken on their claim by October 1, 2024, they would file administrative complaints.

41. On September 27, 2024, Guardwize and Plaintiffs spoke by phone. Following that call, Plaintiffs provided further photograph evidence of damaged property and affirmed they would not file administrative complaints given the progress Guardwize had made on their claim.

42. On October 2, 2024, Plaintiffs requested an update on their claim. And on October 4, 2024, when no response was received, Plaintiffs notified Guardwize they had filed administrative complaints regarding Guardwize's failure to process his claim in a timely fashion.

43. On October 7, 2024, Plaintiffs spoke on the phone with Donna Gotlib ("Gotlib"), a new representative for Guardwize, regarding their claim. Gotlib held herself out as the principal and owner of Guardwize, as well as Alfredo's supervisor.

44. On October 9, 2024, following up on the phone call, Guardwize emailed Plaintiffs stating it required more information to process their claim. Guardwize provided a document matching photos of damaged property Plaintiffs sent with items Plaintiffs claimed were damaged and asked Plaintiffs to make any necessary corrections. Guardwize also asked for additional information on a few damaged items. The email from Guardwize instructed Plaintiffs that they had only five days to respond with adjustments.

45. The documents Guardwize provided and requested corrections on were substantially incorrect, requiring Plaintiffs to effectively rewrite the documents. None-the-less, on October 11, 2024, Plaintiffs delivered the revised documents along with supporting documentation. Due to the size of the delivery and the size limitations of their email service, Plaintiffs provided Guardwize with a link to an online file-share folder. Plaintiffs offered to also

email the files but warned Guardwize this would require over 42 individual emails to accomplish.

46. On October 14, 2024, Guardwize rejected Plaintiff's submission, stating that it required the original documents Plaintiffs had filed with it and that Plaintiffs' delivery method by file-share link was unacceptable. Plaintiffs responded pointing out that Guardwize retained access to all original documents Plaintiffs had sent and instructed Guardwize on how to access them and view any changes which had been made to them. Plaintiffs then proceeded to send the documents by email, as insisted upon by Guardwize. Delivery took 49 separate emails. In reply to Plaintiffs' clarification and resubmission of documents by email, Guardwize stated the information Plaintiffs sent was confusing and would take substantial time to evaluate.

47. On October 22, 2024, Wilkerson and Gotlib met by Zoom video conference. Wilkerson shared his screen and walked Gotlib through the claim in detail. During the meeting, Gotlib admitted that, based on the evidence Plaintiffs had shared, a substantial portion of Plaintiffs' property had been lost or damaged. She further acknowledged that it would have been impossible to fit all of Plaintiffs' property into the truck that made the delivery. The video conference was recorded by mutual assent. Plaintiffs sent Guardwize a copy of the recording, and Guardwize confirmed receipt. Following the video conference, Guardwize advised it would submit its findings to Prime and that Plaintiffs could expect Prime to make an offer by the end of the following week.

48. On November 4, 2024, Plaintiffs received a claim settlement offer from Guardwize (the "Claim Settlement Offer"). A true and accurate copy of the Claim Settlement Offer is attached as Exhibit D. Guardwize rejected over 80 percent of Plaintiffs' claim. For the $30,158.89 Plaintiffs claimed, Guardwize offered only $2,725.70. From this Guardwize deducted a $1,500.00 deductible along with $341.32 for an allegedly unpaid portion of the policy's premium which InsurMedix had failed to bill Plaintiffs, leaving a total compensation amount of just $884.38.


ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S, Tacoma, WA 98402

49. Much of the missing property in Plaintiffs' claim was denied coverage on the basis that the property was not noted as missing on the Descriptive Inventory. This basis was purported in spite of the fact that Guardwize had already acknowledged the Descriptive Inventory was materially incorrect. Many other items of missing and damaged property were denied coverage on the basis that Plaintiffs allegedly added the items to the policy only after the move. Upon information and belief, this is false.

50. Throughout Plaintiffs' interactions with it, Guardwize was disorganized and unprofessional. Alfredo's work was riddled with errors. The claim filing portal provided by InsurMedix was insufficient for Plaintiffs to file their claim, and Guardwize had no internal process for taking a manual claim. Guardwize made the Claim Settlement Offer on a take-it-or-leave-it basis. It also agreed to accept service by mail but then reneged claiming a typo.

51. On May 15, 2025, Plaintiffs, through counsel, sent notice to the Insurance Defendants of their intent to bring an insurance bad faith lawsuit, as required under Rev. Code of Wash. Section 48.30.015.

**FIRST CAUSE OF ACTION**

**Breach of Contract**

**COUNT 1**

**(By Plaintiffs Against Defendant Menards)**

52. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 51, above.

53. On or about July 26, 2024, Plaintiffs and Menards executed a binding estimate for the shipment of Plaintiffs' household goods from New York to Washington for $10,395.00 with $4,435.89 having already been made as a down payment.

54. Menards verbally represented to Plaintiffs that it would hire a moving company other than Swift—which had been hired previously to move Plaintiffs' possessions but had refused to honor Plaintiffs' prior binding estimate.


ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S, Tacoma, WA 98402

55. Menards breached the binding estimate by failing to hire a moving company that would honor the binding estimate. Menards again hired Swift, and Swift again refused to honor Plaintiffs' binding estimate with Menards. Instead, Swift forced Plaintiffs to pay $14,870.89 to move their possessions. Swift only loaded about two-thirds of Plaintiffs' possessions before refusing to load any more as the truck they sent was full. Plaintiffs had to give away, trash, or individually ship the remainder of their property.

56. As a result of Menards' breach, Plaintiffs were harmed by having to pay more to have Swift ship their possessions; by having to give away, trash, or ship the property Swift refused to load; and by losing income while dealing with the property Swift refused to ship.

**COUNT 2**

**(By Plaintiffs Against Defendants Guardwize, Prime, and InsurMedix)**

57. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 56, above.

58. At all relevant times, Guardwize, Prime, and InsurMedix (collectively, the "Insurance Defendants") acted in concert and/or as agents for one another in relation to the Policy so as to indistinguishable from one another.

59. On July 13, 2024, when he executed the Original Binding Estimate with Menards, Plaintiffs also purchased an insurance policy through InsurMedix to protect Plaintiffs' personal property during the move. The policy was with Prime. The total premium was $511.00, and the coverage limit was $15,415.00.

60. On July 19, 2024, Plaintiffs contacted InsurMedix to update the policy to cover a new move date of August 6, 2024. The Policy had a total premium of $852.32 and a coverage limit of $24,695.00.

61. When Plaintiffs' possessions arrived in Washington on September 1, 2024, a substantial amount was missing and of the portion that did arrive a substantial amount was damaged.



ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S, Tacoma, WA 98402

62. On September 1, 2025, Plaintiffs emailed InsurMedix, informing them that roughly a third of their property had gone missing and that there was substantial damage to what had been delivered.

63. On September 4, 2024, Guardwize contacted Plaintiffs regarding his claim.

64. On November 4, 2024, after substantial communications, Guardwize delivered the Claim Settlement Offer, which wrongfully denied most of Plaintiffs' claim. For the roughly $30,000.00 in lost and damaged property, the Claim Settlement Offer offered a total compensation amount of $884.38.

65. The Insurance Defendants breached the Policy by wrongfully denying the vast majority of Plaintiffs' claim and failing to compensate Plaintiffs for the covered damages.

66. Plaintiffs were damaged by the Insurance Defendants' breach by being unable to recover the full amount they were entitled to under the Policy for their lost and damaged property.

## SECOND CAUSE OF ACTION

### Negligence

### (By Plaintiffs Against Menards)

67. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 66, above.

68. As the moving brokerage that provided them with a binding estimate, Menards had a duty to Plaintiffs to contract a moving company that would honor the binding estimate and that would safely and professionally move Plaintiffs' belongings.

69. Menards contracted Swift to move Plaintiffs' possessions on the original July 19, 2024, move date. Swift refused to honor the Original Binding Estimate forcing Plaintiffs to delay the move.

70. Despite Swift refusing to honor the Original Binding Estimate the first time around, and despite having assured Plaintiffs it would contract a different company that would


ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S, Tacoma, WA 98402

honor the Final Revised Binding Estimate, Menards breached its duty by again contracting Swift to move Plaintiffs' possessions. Further, at the time Menards contracted Swift, Swift's insurance and surety bond were lapsed. It was a breach of Menards' duty to hire a carrier that was not properly insured and bonded. Menards also failed to provide Swift with Plaintiff's video inventory or to inform Swift regarding the special packing need required for Plaintiffs' LEGO display pieces.

71. Menards also breached its duty by being unavailable on August 6, 2024, to respond to Plaintiffs' calls.

72. As a result of Menard's breaches, Swift arrived on August 6, 2024, to conduct the move. Swift refused to honor the Final Revised Binding Estimate, instead charging $14,870.89 on the bill of lading. Swift also sent a truck too small to fit all of Plaintiffs' property and refused to transport roughly a third of Plaintiffs' possessions forcing them to give away, trash, or separately ship those possessions. Finally, Swift lost roughly a third of the possessions it did transport and damaged a substantial portion of the possessions it delivered.

73. Plaintiffs were harmed by having to pay above the Final Revised Binding Offer to move their possessions; by having to give away, trash, or separately ship the possessions Swift refused to transport; by having a substantial portion of their possessions lost or damaged; and by losing wages while they dealt with the property Swift refused to transport and the property lost and damaged during the move.

74. Menard's breach was a substantial factor in causing Plaintiffs' harm.

## THIRD CAUSE OF ACTION

### Insurance Bad Faith Under RCW § 48.30.015

### (By Plaintiffs Against Defendants InsurMedix, Prime, and Guardwize)

75. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 74, above.


ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S, Tacoma, WA 98402

76. At all relevant times, InsurMedix, Prime, and Guardwize (collectively, the "Insurance Defendants") acted in concert and/or as agents for one another in relation to the Policy so as to indistinguishable from one another.

77. On September 1, 2025, Plaintiffs made a claim on the Policy related to their possessions that were lost or damaged during the move.

78. The Insurance Defendants did not make their Claim Settlement Offer until November 4, 2024, over two months after Plaintiffs made their claim.

79. The Insurance Defendants offered Plaintiffs only $884.38 for the $30,158.89 in lost and damaged property Plaintiffs claimed, wrongfully claiming most of Plaintiffs' claim was not covered.

80. **The Insurance Defendants' offer to Plaintiffs were delayed and made in bad faith by failing to operate with good faith in estimating and paying covered damages under the Policy.**

81. The Insurance Defendants unreasonably denied coverage under Rev. Code Wash. Section 48.30.015.

82. On May 15, 2025, Plaintiffs, through counsel, sent notice to the Insurance Defendants of their intent to bring an insurance bad faith lawsuit, as required under Rev. Code Wash. Section 48.30.015.

## FOURTH CAUSE OF ACTION

### Unfair Business Practices

### (By Plaintiffs Against InsurMedix, Prime, and Guardwize)

83. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 82, above.

84. At all relevant times, InsurMedix, Prime, and Guardwize (collectively, the "Insurance Defendants") acted as agents for one another in relation to the Policy so as to indistinguishable from one another.


ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S, Tacoma, WA 98402

85. On September 1, 2025, Plaintiffs made a claim on the Policy related their possessions that were lost or damaged during the move.

86. The Insurance Defendants did not make their Claim Settlement Offer until November 4, 2024, over two months after Plaintiffs made their claim.

87. The Insurance Defendants offered Plaintiffs only $884.38 for the $30,158.89 in lost and damaged property Plaintiffs claimed, wrongfully claiming most of Plaintiffs' claim was not covered.

88. The Insurance Defendants' offer was made late and for a *de minimis* amount. The lack of effort by the Insurance Defendants to cover Plaintiff's damages was intentional and done in bad faith to benefit the Insurance Defendants' financially at the cost of damaging further Plaintiffs.

89. By failing to make a prompt settlement and by unreasonably denying most of Plaintiffs' claim, the Insurance Defendants engaged in an unfair business practice within the meaning of Rev. Code Wash. Section 19.86.020, et seq.

## FIFTH CAUSE OF ACTION

### Fraudulent Misrepresentation

### (By Plaintiff Against Menards)

90. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 89, above.

91. Menards made a total of four binding estimates for Plaintiffs. These binding estimates substantially underestimated the volume of Plaintiffs' inventory.

92. Menards also made several representations to Plaintiffs. Menards represented it would reimburse Plaintiffs for a roundtrip flight from Seattle to New York. Menards represented it would waive some of its commission to get a better moving company. Menards represented that the scheduled move, which took place on August 6, 2024, would be a flat rate to fill a full



ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S. Tacoma, WA 98402

truck. And Menards represented it would hire a household goods motor carrier other than Swift for the move.

93. Menards four binding estimates and each of its representations were untrue.

94. Upon information and belief, Menards knew its four binding estimates and each of its representations were untrue when it made them.

95. Menards made its four binding estimates and each of its representations to entice Plaintiffs to hire Menards and to continue with Menards after the July 19, 2024, move failed.

96. Plaintiffs reasonably relied on Menards four binding estimates and its representations in hiring Menards and in continuing with Menards after the July 19, 2024, move failed.

97. As the factual and proximate result of Menards' misrepresentations, Plaintiffs were harmed by having to pay more for the August 6, 2024, move. Plaintiffs were also harmed by having to give away, trash, or separately ship about a third of their possessions that Menards was supposed to have shipped. Plaintiffs were also harmed by the loss of about a third of their property that was shipped and by the damage to a substantial portion of their property that was delivered. Plaintiffs were also harmed by losing Wilkerson's wages while he dealt with the failed July 19, 2024, move and with the loss of and damage to Plaintiffs' property that was shipped. Plaintiffs have also suffered substantial emotional distress.

98. Mendards acted with malice, oppression, and/or fraud, and Plaintiffs are entitled to punitive damages.

**SIXTH CAUSE OF ACTION**

**Negligent Misrepresentation**

**(By Plaintiffs Against Menards)**

99. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 98, above.



ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S, Tacoma, WA 98402

100. Menards made a total of four binding estimates for Plaintiffs. These binding estimates substantially underestimated the volume of Plaintiffs' inventory.

101. Menards also made several representations to Plaintiff. Menards represented it would reimburse Plaintiffs for a roundtrip flight from Seattle to New York. Menards represented it would waive some of its commission to get a better moving company. Menards represented that the scheduled move, which took place on August 6, 2024, would be a flat rate to fill a full truck. And Menards represented it would hire a household goods motor carrier other than Swift for the move.

102. Menards four binding estimates and each of its representations were untrue.

103. Upon information and belief, Menards had no reason to believe its four binding estimates and each of its representations were true when it made them.

104. Menards made its four binding estimates and each of its representations to entice Plaintiffs to hire Menards and to continue with Menards after the July 19, 2024, move failed.

105. Plaintiffs reasonably relied on Menards four binding estimates and its representations in hiring Menards and in continuing with Menards after the July 19, 2024, move failed.

106. As the factual and proximate result of Menards' misrepresentations, Plaintiffs were harmed by having to pay more for the August 6, 2024, move. Plaintiffs were also harmed by having to give away, trash, or separately ship about a third of their possessions that Menards was supposed to have shipped. Plaintiffs were also harmed by the loss of about a third of their property that was shipped and by the damage to a substantial portion of their property that arrived and was unloaded. Plaintiffs were also harmed by losing Wilkerson's wages while he dealt with the failed July 19, 2024, move and with the loss of and damage. Plaintiffs have also suffered substantial emotional distress.


ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S, Tacoma, WA 98402

## SEVENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (By Plaintiffs Against Menards)

107. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 106, above.

108. On the original move date of July 19, 2024, Menards hired Swift to move Plaintiffs' possessions. Swift, however, refused to honor Plaintiffs' binding estimate and the move was cancelled for that date.

109. Thereafter, Menards also made several representations to Plaintiffs. Menards represented it would reimburse Plaintiffs for a roundtrip flight from Seattle to New York. Menards represented it would waive some of its commission to get a better moving company. Menards represented that the scheduled move, which took place on August 6, 2024, would be a flat rate to fill a full truck. And Menards represented it would hire a household goods motor carrier other than Swift for the move.

110. However, Menards fulfilled none of these representations, once again hiring Swift to conduct the move.

111. On August 6, 2024, the day of the move, Menards was unresponsive to Plaintiffs' communications inquiring when the movers would arrive. Swift did not arrive until 4:30 p.m. As a result of this late arrival, Plaintiffs had to help pack and load their property, much of which occurred in the rain, which began after Swift arrive. Loading was not completed until about 2:30 a.m. Swift refused to load roughly a third of Plaintiffs' property, claiming the truck was full. Swift again refused to honor Plaintiffs' binding estimate and produced a bill of lading charging them several thousand dollars more than the Final Revised Binding Estimate, despite not transporting all of Plaintiffs' possessions.

112. When their possessions arrived about a third of it was missing and a substantial portion of what did arrive was damaged. In particular, Plaintiffs' collectible LEGO sets were


ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S, Tacoma, WA 98402

hastily and improperly packed, despite Plaintiffs' repeatedly informing by Menards and Swift that they required especially careful packing. Further, the ashes of Plaintiffs' pets were dumped and scattered in the moving truck.

113. Menards engaged in outrageous conduct by rehiring Swift to move Plaintiffs' property, having promised to use a shipper other than Swift, and knowing Swift would neither honor Plaintiffs' binding estimate nor carefully and responsibly transport Plaintiffs' property. Menards further engaged in outrageous conduct by failing to communicate effectively with Plaintiff on July 19, 2024, when the move was initially supposed to take place, or on August 6, 2024, when it actually took place.

114. In so acting, Menards intentionally or recklessly inflicted emotional distress.

115. As a result of Menards' actions, Plaintiffs suffered severe emotional distress related to the loss and destruction of their property and the experience with having their property transported.

## EIGHTH CAUSE OF ACTION

### Acts or Omissions in Violation of 49 U.S. Code Part B

### (By Plaintiffs Against Menards)

116. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 115, above.

117. Menards is a broker subject to jurisdiction providing service subject to jurisdiction under 49 U.S. Code Chapter 135.

118. Under 49 U.S. Code Section 14704, subdivision (a)(2) Menards is liable for any damages sustained by a person as a result of an act or omission it committed in violation of 49 U.S. Code Part B.

119. Menards violated 49 U.S. Code Section 13708, subdivision (b) by giving Swift an inaccurate version of the Final Revised Binding Estimate, causing Swift to present false or misleading information to Plaintiffs about the actual rate, charge, or allowance. Menards also


ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S. Tacoma, WA 98402

violated this section by giving Swift a binding estimate it knew or should have known substantially underestimated the volume of Plaintiffs' inventory.

120. Menards violated 49 U.S. Code Section 13901 by contracting Swift to transport Plaintiffs' possession when Menards knew or should have known that Swift's surety bond and insurance policy, which are required for registration, had lapsed.

121. Menards violated 49 U.S. Code Section 13902, subdivision (a)(2)(A) by contracting Swift to transport Plaintiffs' possession when Menards knew or should have known that Swift was not registered with a qualified arbitration program.

122. Menards violated 49 U.S. Code Section 13907, subdivision (b) by contracting Swift to transport Plaintiffs' possession when Menards knew—based on Swift's behavior at the failed July 19, 2024, move date—did not use due diligence and reasonable care in selecting and maintaining agents qualified to provide adequate household goods transportation services. Swift's lack of diligence was again demonstrated on the August 6, 2024, move date when Swift's movers arrived late and without the boxes or tools necessary to complete the move.

123. Menards violated 49 U.S. Code Section 14104 by providing a binding estimate then failing to contract a carrier that would honor it. Menards also violated this section by failing to provide Plaintiffs with Department of Transportation publication FMCSA-ESA-03-005 or Department of Transportation publication OCE 100. Menards also violated this section by contracting Swift to transport Plaintiffs' possessions knowing that Swift would not meet performance standards established by the Secretary of Transportation.

124. Menards violated 49 U.S. Code Section 14707 by contracting Swift to transport Plaintiffs' possession when Menards knew or should have known that Swift's surety bond and insurance policy had lapsed and that Swift was therefore out of registration.

125. Menards violated 49 U.S. Code Section 14912 by providing Plaintiffs with a binding estimate it knew substantially underestimated the volume of Plaintiffs' inventory, thereby securing a fraudulent weight on a shipment of household goods.

126. Menards violated 49 U.S. Code Section 14915 by refusing to disclose the warehouse in which Plaintiffs' possessions were stored during transportation, thereby holding the undelivered portions of Plaintiffs' shipment hostage.

127. Menards violated 49 U.S. Code Section 14916, subdivision (a)(1) as it is not fit, willing, and able to be a broker under 49 U.S. Code Section 13904, subdivision (a)(2). Menards also violated subdivision (c) of this section by contracting Swift to transport Plaintiffs' possessions when Swift was out of compliance with the registration requirements under the code.

128. As a result of Menards' many violations, Plaintiffs suffered harm in having to pay more to transport their possessions than they agreed to in the Final Revised Binding Estimate; in having to donate, throw away, or separately ship their possessions Swift would not transport; and in their possessions that were lost or damaged during shipment. Plaintiffs also have suffered substantial emotional distress and have accrued costs and attorneys' fees as a result of Menards' violations.

///
///
///
///
///
///
///
///
///
///
///
///


ASTUNO & ASSOCIATES, APC
James J. Astuno Jr. WSBA NO. 60505
1105 Tacoma Ave S, Tacoma, WA 98402

## PRAYER FOR RELIEF

THEREFORE, Plaintiff requests that the court enter judgment in his favor against defendants as follows:

A. For compensatory and consequential damages in an amount to be determined;

B. For reasonable attorneys' fees incurred by Plaintiff in bringing this action;

C. Prejudgment interest at the maximum amount allowed;

D. For treble damages under RCW 48.30.015(2) and/or RCW 19.86.090;

E. For punitive damages as appropriate;

F. For such other and further relief as the court may deem just and appropriate.

DATED THIS June 13th, 2025.

/S/James J. Astuno Jr.

**James J. Astuno Jr.**
WSBA No. 60505
**Yi Tian Fang**
WSBA No. 62041
1105 Tacoma Avenue S,
Tacoma, WA 98402
*Attorneys for Plaintiff*

# Exhibit A

MOVING INSURANCE

Powered by Prime Insurance Company

## MOVING INSURANCE DECLARATIONS

| POLICY NUMBER | POLICY START DATE | POLICY END DATE |
|---|---|---|
| MOV012400161 | 08/06/2024 | 08/27/2024 |

**MASTER POLICY NUMBER**

SC24030462

| FULL NAME | PHONE | EMAIL |
|---|---|---|
| Brice Wilkerson | 4254455364 | brice.wilkerson92@gmail.com |

| MOVING COMPANY | ORIGIN ADDRESS | MOVING DESTINATION |
|---|---|---|
| MENARDS MOVING & STORAGE LLC | 2331 Rockwood Ave,Baldwin,NY | 5409 Seahurst Ave,Everett,WA |

### COVERAGE DETAILS

| Coverage Name | Coverage Limit | Premium |
|---|---|---|
| Total Value | $24,695 | 902.32 |
| High-Value Items (out of total) | $9,000 | Included |
| Surplus Line Premium Tax | | 29.07 |
| Surplus Line Fees | | 1.00 |

Powered by Prime Insurance Company

| | |
|---|---|
| Service fee | 14.66 |
| Special Discount | 94.73 |
| **Total Premium** | **852.32** |

In witness whereof, InsurMedix Brokers has caused this policy to be signed by its CEO.

Darren Gradus,
CEO

## NEW YORK

## SURPLUS LINES DISCLOSURE NOTICE

THE INSURER(S) NAMED HEREIN IS (ARE) NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND IN THE EVENT OF THE INSOLVENCY OF THE INSURER(S), NOT PROTECTED BY THE NEW YORK STATE SECURITY FUNDS. THE POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THE DEPARTMENT OF FINANCIAL SERVICES PERTAINING TO POLICY FORMS.

MOVING INSURANCE

Powered by Prime Insurance Company

# HOUSEHOLD MOVING INSURANCE POLICY

## PHM-00-01

**This HOUSEHOLD MOVING INSURANCE POLICY (the "Policy"), is a manuscript policy, meaning it is a negotiated agreement between the Named Insured and the Insurer, and as such it may differ significantly from policies offered by other insurance companies. This Policy contains strict claim reporting requirements which must be followed as conditions precedent to coverage. The terms of this Policy are contractual and are not merely recitals and all information supplied to the Insurer to obtain coverage constitute warranties of the Named Insured to the Insurer.**

**Various other provisions of this Policy restrict and limit the coverage provided. Please read the entire Policy, including any Endorsements, carefully to determine your rights and duties and what is and is not covered.**

**Throughout the Policy, including any Endorsements, the terms "you," "your," and "Insured" refer to the Named Insured listed on the Declarations and any Certificate Holder(s) listed on a Certificate of Insurance. The term "Named Insured" refers only to the Named Insured listed on the Declarations. The term "Certificate Holder" refers only to the person or entity listed as the Certificate Holder on a Certificate of Insurance. The terms "we," "us," "our," and the "Company" refer to InsurMedix and/or the Insurer.**

**Capitalized terms have specific meaning throughout the Policy as defined herein.**

## SECTION I — INSURING AGREEMENT

A. Coverage

Subject to the terms and conditions set forth herein and all applicable Limits of Insurance, we will pay, in excess of the Deductible, for Accidental Damage or Loss sustained to a Certificate Holder's personal property while in the care, custody, and control of an Authorized Moving Company if:

1. A Certificate of Insurance is purchased by the Certificate Holder during the Policy Period and at least twenty-four (24) hours prior to the Move Date; and
2. A Valued Inventory is properly completed, signed, and submitted prior to the Move Date; and
3. The Accidental Damage or Loss occurs during the Policy Period in the United States of America; and
4. The Certificate Holder's personal property is in the Authorized Moving Company's care, custody, and control for no more than twenty-one (21) days; and
5. A Claim for Damage or Loss is presented to the Insurer within seven (7) days of delivery to the Address of Destination; and
6. The Certificate Holder is able to produce accurate, signed copies of all acceptance and delivery records which contain:
   a. the dates during which the Certificate Holder's personal property was in the Authorized Moving Company's care, custody and control;
   b. the Address of Origin and the Address of Destination; and
   c. properly completed exception remarks regarding any claimed Damage or Loss.

B. Coverage Conditions

1. Items Requiring Specific Packing

The following items are subject to specific packing requirements. If specific packing requirements are not met, there will be no coverage.

a. Delicate and fragile items, including but not limited to lamps, glass tables/tops, marble tables/tops, mirrors, slates, taxidermy, paintings, framed pictures, statues, chandeliers, display cases, and glass door cabinets must be handled by a certified third-party service or the Authorizing Moving Company and professionally packed in a cardboard moving carton or crated in wooden or other protective containers specifically manufactured for the item. Wrapping such items only in moving pads does not meet the specific packing requirements of this Policy and will not be covered.

b. Any delicate or fragile item valued at $5,000 or more must be professionally crated in a solid wood crate by a certified third-party service and proof of such crating must be kept and provided to the Insurer upon request.

c. Televisions must be professionally wrapped or protected with original closed-cell extruded polystyrene foam (XPS) (such as Styrofoam), or both bubble wrap and moving blankets packed in a television carton, original TV carton, or wooden crate. Televisions wrapped in cut down cardboard or moving blankets are not covered by this Policy. Televisions must be unpacked at the Address of Destination and any Damage or Loss must be noted on delivery records signed by all parties. Damage or Loss to televisions not noted on signed delivery records will not be covered. In the event of a Claim relating to a television, the Certificate Holder must provide the Insurer the year, make, and model of the television and proof of ownership.

d. Mattresses and box springs are specifically excluded from coverage unless packed in a cardboard carton specifically designed for this purpose. Shrink-wrapped mattresses or mattresses transported in bags or covers are not covered by this Policy.

e. Lamps and lamp shades, including floor and pole lamps, must be packed in cardboard moving cartons.

f. Pianos must be foam wrapped, then pad wrapped, and placed on a piano board and a moving dolly. Any piano with a value of $10,000 or more must be professionally disassembled, packed, loaded and unloaded, reassembled and unpacked by a certified third-party piano moving service. Adjusting and tuning of a piano is not covered by this Policy.

g. Hot tubs, Jacuzzis, and pool tables must be disassembled, packed, loaded, unloaded, unpacked and reassembled by a certified third-party service.

h. Grandfather clocks must be disassembled, packed, loaded and unloaded, unpacked, and reassembled by a certified third-party service. Adjusting and reassembling of grandfather clocks is not covered by this Policy.

2. Valued Inventory

All transported items must be listed and identified in the Valued Inventory and on the Authorized Moving Company's Inventory List. A description of and declared value for each transported item must be included. The amount of insurance purchased must not be less than the current replacement value of the transported items. In no event will the Insurer's maximum liability exceed the declared value listed in the Valued Inventory. Items not listed in the Valued Inventory are not covered by this Policy. Items listed in the Valued Inventory without a specific description or marked as "miscellaneous" are not covered by this Policy. Any item insured for less than the replacement cost will be compensated on a pro-rata basis. No items or goods can be added to or deleted from the Valued Inventory within twenty-four (24) hours of the Move Date.

MOVING INSURANCE

Powered by Prime Insurance Company

3. Items Individually Valued at $2,500 or More

For items individually valued at $2,500 or more, a photograph of the item must be taken and included with the Valued Inventory. Additional premium will be calculated and charged for items valued at $2,500 or more.

4. Warehouse/Storage Facility

A Certificate Holder's personal property must not be picked up from a warehouse or storage facility. The Address of Origin must not be a warehouse or storage facility.

If a Certificate Holder's personal property is delivered to a warehouse or storage facility, all items must be checked at the time of delivery and any Damage or Loss must be noted on delivery records signed by all parties. Any external Damage or Loss not listed on the signed delivery records will not be considered.

5. Missing Items

Missing items will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. Items claimed missing from moving cartons will only be covered if the respective carton is noted as being tampered with, open, or missing at delivery. Blanket statements such as "items missing" or "missing boxes" will not be accepted.

6. Mechanical and Electrical Malfunctions

Mechanical and electrical malfunctions will not be covered unless exceptions are noted on signed delivery records for external damage to the subject item. Loss of data and recalibration is not covered by this Policy. Any item inventoried as mechanical condition unknown will not be covered.

7. Packed By Certificate Holder

Any item(s) packed by a Certificate Holder must be placed in a heavy-duty moving box. Each box packed by a Certificate Holder must remain open until sealed by the Authorized Moving Company. If a box packed by a Certificate Holder is sealed without the consent of the Authorized Moving Company, the maximum amount the Insurer will pay per box will not exceed $20. If exterior damage to a box packed by a Certificate Holder is noted on delivery records, there will be no coverage for Damage or Loss sustained to any of the items in the damaged box.

For boxes packed by a Certificate Holder, the content of each box must be photographed and itemized, and the value of the content must not exceed $500/per box. Items in original, manufacturer packaging are considered packed by a Certificate Holder. Claims will not be honored for shortage of any Certificate Holder-packed items unless the shortage has been noted on delivery records signed by all parties.

8. Care, Custody and Control of an Authorized Moving Company

A Certificate Holder's personal property must remain in the Authorized Moving Company's care, custody, and control during all stages of the move. There will be no coverage under this Policy if care, custody or control of personal property is given to a person or entity other than the Authorized Moving Company.

9. Nullification of Certificate of Insurance

If a Certificate Holder's personal property has not been transferred into the care, custody, and control of the Authorized Moving Company within thirty (30) days of when the Certificate Holder's Certificate of Insurance was issued, and InsurMedix has not been notified of a delay in the transport, the Certificate Holder's Certificate of Insurance will automatically be deemed to not have gone into effect and become null and void on the 31st day after issuance at 12:01 a.m. Eastern time and all liability of the Insurer under the Certificate of Insurance will end without further notice or

obligation.

C. Limit Of Insurance

1. Liability of the Insurer is limited to the Limit of Insurance amount shown on the Declarations, but in no event will exceed $60,000 per Certificate Holder.

2. Claim settlement will be based on the actual market value or declared value of each item that is damaged or lost, whichever is lower, and is subject to deductions for depreciation and all Deductible requirements.

D. Exclusions

This Policy does not cover and we will not be obligated to pay for any Damage or Loss excluded by this section regardless of any other cause or event contributing concurrently or in any other sequence to the Damage or Loss and regardless of whether any other cause or event contributing to the Damage or Loss was the primary or secondary cause.

1. Valuables – Damage or Loss to jewelry, bags (per item) and shoes (per set) valued at more than $500, watches, gemstones, cash, currency or bank notes, safes, deeds, travelers checks, coin or stamp collections, sports memorabilia, drones, alcoholic beverages, food, perishable items, plants or living things, medication, Autos, motorcycles, motor scooters, furs or garments trimmed with fur, ammunition, illegal goods or contraband, cigarettes, laptops or tablet computers, firearms, video games, mobile or cellular telephones, non-household items, items that are considered for commercial, industrial or non-household use including merchandise for sale or exhibition, real estate, items not listed on the Valued Inventory, items not transported by the Authorized Moving Company, and items received by the Authorized Moving Company as condition unknown.

2. Damage or Loss related to, caused by, or arising from spoilage, contamination, wear and tear, deterioration, or changes in climatic conditions.

3. Damage or Loss related to, caused by, or arising from the actual, alleged, or threatened presence of mold, mildew, or fungi or any kind whatsoever, or any materials containing them at any time.

4. Damage or Loss related to, caused by, or arising from moths, vermin, or any other type of infestation.

5. Damage or Loss related to, caused by, or arising from inherent vice including, but not limited to, a shipment containing Hazardous Materials or items that are flammable, corrosive, or explosive.

6. Damage or Loss related to, caused by, or arising from the negligence of a Certificate Holder.

7. Damage or Loss related to, caused by, or arising out of the confiscation, seizure, or destruction of goods by a governmental agency, entity, or authority.

8. Damage or Loss related to, caused by, or arising from moisture or water unless negligence by the Authorized Moving Company has been proven to be the cause of the Damage or Loss.

9. Damage or Loss related to, caused by, or arising from:

   a. War, invasion, acts of foreign enemies, hostilities, or warlike operations (whether war be declared or not), civil war, rebellion revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

   b. Any act of terrorism, including, but not limited to, the use of force or violence and/or the threat thereof, of any person or group, whether acting alone or on behalf of or in connection with any organization or government, committed for political, religious, ideological, or similar purposes, including the intention to influence any government and/or to put

the public, or any section of the public, in fear.

10. Damage or Loss due to delay or service-related issues, including, but not limited to mover and customer agreements, shipment delays, etc.

11. Damage or Loss related to, caused by, or arising, directly or indirectly, from radiation, radioactive exposure, pollution or contamination, a nuclear weapon, nuclear reaction, atomic fission, atomic fusion, nuclear decay, nuclear transmutation, and any other nuclear chemistry related event or occurrence.

12. Damage or Loss that existed prior to the Authorized Moving Company's transportation of the item(s).

13. Damage or Loss that was expected or intended by an Insured or the Authorized Moving Company or any person acting on behalf of an Insured or the Authorized Moving Company.

14. Damage or Loss related to, caused by, or arising out of the presence of or exposure to Pollutants or Hazardous Materials.

15. Damage or Loss related to, caused by, or arising from a transmissible pathogen, disease, microorganism, or causative agent of disease, including, but not limited to, a virus, bacterium, or fungus, or the suspected or anticipated presence of a transmissible pathogen, disease, microorganism, or causative agent of disease.

16. Damage or Loss to any item constructed of any type of engineered wood, manufactured wood, veneered chipboard, particle board, MDF – medium density fiberboard, composite board, press board, press wood, or similar material, except when negligence of the Authorized Moving Company has been determined to be the cause of the Damage or Loss.

17. Damage or Loss to any item packed by a Certificate Holder unless the Damage or Loss is caused directly by the Authorized Moving Company's negligence, fire, lightning, explosion, flood, cyclone, tornado, windstorm, collapse of bridges, theft, or collision, overturn or upset of the transporting vehicle.

18. Loss of value due to repair.

19. Incidental charges relating to a covered repair.

20. Damage or Loss to any item picked-up or originating from a warehouse or storage facility.

21. Damage or Loss from defect or inherent vice of the article, including susceptibility to damage because of atmospheric conditions such as temperature and humidity or changes therein.

## SECTION II — WHO IS AN INSURED

A. The Named Insured listed on the Declarations.

B. Any person or entity identified as a Certificate Holder on a Certificate of Insurance issued by the Insurer.

## SECTION III — DEDUCTIBLE

A. We only cover that part of Damage or Loss that is in excess of the Deductible.

B. All Damage or Loss arising during the Policy Period will be adjusted in accordance with the valuations and limitations set forth in this Policy. The Insurer shall have no obligations under this Policy until the value of the Claim exceeds the Deductible.

C. When one or two items sustain Damage or Loss, the Deductible, which must be paid by the Certificate Holder, is $500 or 20% of the Claim settlement, whichever is higher.

D. When three or more items sustain Damage or Loss, the Deductible, which must be paid by the Certificate Holder, is $1,500 or 20% of the Claim settlement, whichever is higher.

## SECTION IV — CONDITIONS

A. Duties After Damage or Loss

1. As an express condition precedent to coverage under this Policy, the Certificate Holder must give InsurMedix immediate written notice, as soon as possible and in no event later than seven (7) days after delivery to the Address of Destination, of any Damage or Loss which might give rise to a Claim covered by this Policy. Notice of loss must be submitted online in your customer portal in which you purchased this Policy via the link provided to you by email. If you cannot find the access to report the claim online through the customer portal, you are required to notify InsurMedix of the loss via email to claims@insurmedixbrokers.com.

2. Every Insured must:

   a. In order to submit a Claim, the Certificate Holder must provide the final moving documents such as a signed bill of lading and a signed inventory list.

   b. Promptly notify police in the event personal property is stolen.

   c. Take all reasonable steps to minimize a loss and ensure all rights against third parties are properly reserved and exercised.

   d. Authorize us to obtain records and other information.

   e. Cooperate with us in the investigation of any Claim including, but not limited to providing written and/or sworn statements concerning the Claim.

   f. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to an Insured, or which provides similar benefits to an Insured because of Damage or Loss to which this Policy may apply.

   g. Permit us or our agents access to damaged property and permit us to take samples as necessary to assist in investigating the Claim; and provide us with records and documents we request and permit us to make copies.

B. Other insurance

1. If other valid and collectible insurance, whether primary, excess or contingent or on any other basis, including but not limited to homeowner's insurance, rental insurance, manufacturer warranty, moving company's insurance, etc. or any form of self-insurance available to an Insured for Damage or Loss covered under this Policy then this Coverage is excess over the other insurance, including any form of self-insurance.

2. When both this insurance and other insurance, whether primary, excess or contingent, or on any other basis, or any form of self-insurance apply to Damage or Loss, we shall not be liable under this Policy for a greater proportion of the Damage or Loss than that stated in the applicable contribution provision below:

   a. Contribution by equal shares – If all such other insurance provides for contribution by equal shares, we shall not be liable for a greater proportion of such Damage or Loss than that which would be payable if each insurer or self-insured entity contributes an equal share until the share of each Insurer or self-insured entity equals the lowest

MOVING INSURANCE

Powered by Prime Insurance Company

applicable limit of insurance under any one policy, or the full amount of the Damage or Loss is paid. With respect to any amount of the Damage or Loss not so paid, the remaining insurers or self-insured entity will then contribute an equal share of the remaining amount of the Damage or Loss until each insurer has paid its limit in full or the full amount of the Damage or Loss is paid.

b. Contribution by limits – If all such other insurance does not provide for contribution by equal shares, the Insurer shall not be liable for a greater proportion of such Damage or Loss than the applicable limit of insurance under this Policy bears to the total applicable limit of insurance of all other valid and collectible insurance applicable to such Damage or Loss.

3. If this Policy and any other policy or coverage contract issued to you by us or any company affiliated with us apply to the same Damage or Loss, the Limit of Insurance under all of the policies and coverage contracts shall not exceed the highest applicable Limit of Insurance under any one policy or coverage contract. This condition does not apply to any policy or coverage contract issued by us, or an affiliated company, specifically to apply as excess insurance over this Policy.

C. Loss to a Pair or Set.

If any item of a "pair" or "set" sustains Damage or Loss, payment will only be made for the proportionate value of the item damaged or lost, not the entire pair or set. Items listed as a "pair" or "set" must be insured either at the total pair's or set's replacement value or with the individual replacement value of each piece listed.

D. Subrogation and Impairment of Insurer's Rights

1. After payment of a Claim under this Policy, the Insurer shall be subrogated to the extent of their payment to all the Insured's rights of recovery against the Authorized Moving Company and any other involved person or organization. The Insured cannot claim any items with the Authorized Moving Company that are covered by this Policy.

2. Any act or agreement by an Insured, prior or subsequent to the effective date of this Policy, whereby any right of an Insured to recover the full value of or amount of any Damage or Loss sustained to any covered item from another party is released, impaired or lost, shall render this Policy null and void, but the right of the Insurer to retain or recover the premium shall not be affected.

E. Concealment, Misrepresentation or Fraud

This Policy shall be null and void if an Insured conceals or misrepresents any material fact or circumstance concerning this Policy or any Claim presented under this Policy.

F. Claim Settlement

1. All Claim payments, less any applicable Deductible, will be made in U.S. dollars. You cannot receive double compensation for the same Damage or Loss. It is illegal to collect twice on the same item(s).

2. Claim settlement will be based on the lower of:

a. the item's declared value;

b. the item's market value;

c. the value assessed by an appraiser; or

d. the repair cost when an item is repairable.

For items with a claimed value of $2,500 or more, a third-party appraisal of the item is required if the item is more than one year old. The Certificate Holder must pay the cost of the third-party appraisal. If the subject item was purchased by the Certificate Holder within one year of the Damage or Loss, a receipt or other proof of purchase document will be accepted in lieu of the third-party appraisal.

G. Salvage

If the Insurer replaces, makes a Total Loss payment, or pays the insured amount shown on the Valued Inventory for a damaged item, the Insurer may, at its option, salvage the damaged item.

H. Recovered Item

If you or we recover any item for which we have made payment under this Policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered item is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered item.

I. Suit Against Insurer

No action shall be brought against the Insurer unless there has been full compliance with the terms of this Policy, and the action is brought within twelve (12) months after delivery at the Address of Destination. However, if such limitation is not permissible under the laws where this Policy is issued, any action against the Insurer must be brought within the shortest period of time permitted by the laws of such state.

J. Cancellation of This Policy

1. Except as indicated in the Declarations or an Endorsement issued by the Insurer, by entering into this Policy, neither the Insurer nor the Named Insured are bound to continue coverage through the entire Policy Period and either may cancel the Policy for any reason, subject to the terms and conditions of this Policy, including without limitation, the conditions regarding earned and returnable premiums.

2. The Named Insured or its representatives shown on the Declarations may cancel this Policy by mailing a request to cancel to the Insurer. A request to cancel is not effective until the Insurer has acknowledged receipt of and processed the cancellation request.

3. The Insurer or its representatives may cancel this Policy by mailing a written notice of cancellation to the Named Insured at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium or upon the Named Insured's failure to pay any premium or any other cost or fee required to be paid under the terms of this Policy; or

   b. 10 days before the effective date of cancellation if we cancel for any other reason, unless a longer period of time is specifically required by applicable law.

4. In the event this Policy is cancelled by the Insurer, the Named Insured, or any of their respective representatives for any allowable reason, any other policy issued to the Named Insured by the Insurer, or one of its affiliates, will also become subject to cancellation.

5. The Insurer will mail any notice of cancellation or any other notice to be delivered under this Policy to the Named Insured's mailing address shown on the Declarations or an Endorsement issued by the Insurer changing such address. It is the Named Insured's obligation to maintain a current mailing address on file with the Insurer.

6. Notice of cancellation will state the effective date of cancellation and the Policy Period will end on that date.

7. In the event of a Claim any time prior to cancellation, the total premium set forth on the Declarations will be deemed fully earned. Furthermore, any premiums paid by the Certificate Holder will be deemed fully earned unless the Certificate of Insurance is cancelled as provided below.

8. If notice is mailed, a prepaid proof of mailing is sufficient proof of notice to the Named Insured. Notice deposited in the mail in the manner described above shall be effective when so deposited.

9. This Policy is not subject to automatic renewal. The Insurer has no obligation to offer the Named Insured insurance in the future and has no obligation to provide the Named Insured with further notice of the expiration of this Policy. The Insurer may, at its option, offer terms for future separate policies.

10. At no time will cancellation of this Policy for any reason require the Insurer to refund an amount of premium over or above the minimum, fully earned premium set out in this Policy.

K. Cancellation of a Certificate of Insurance

1. The Insurer reserves the right to cancel any Certificate of Insurance without notice. In this event, a full refund will be made.

2. If a Certificate of Insurance is canceled by the Certificate Holder within twenty-four (24) hours of the Move Date, there will be no refund of premium issued.

3. If a Certificate of Insurance is canceled by the Certificate Holder four (4) or more days before the Move Date, 80% of the charged premium will be refunded.

4. A Certificate Holder may cancel a Certificate of Insurance by emailing a request to cancel to InsurMedix at movingupdate@insurmedixbrokers.com. A request to cancel is not effective until InsurMedix has acknowledged receipt of and processed the cancellation request.

L. Premium

1. We will compute the premium for this Policy in accordance with our rules and rates at the time coverage is issued on behalf of the Named Insured.

2. This Policy will be activated only after full payment of the premium quoted has been received by the Insurer.

M. Examinations, Inspections, and Surveys

The Insurer has the right, but is not obligated to:

1. Examine and audit the Named Insured's books and records as they relate to this Policy at any time as allowed by applicable law;

2. Make inspections and surveys of the Named Insured and its operations, premises, equipment, property, and books at any time;

3. Prepare reports on the results of the inspections and surveys, and provide copies of said reports to the Insured; and

4. Recommend and/or require changes, repairs, or other acts to be completed as a condition precedent to continued coverage under the Policy.

The inspections, surveys, reports, or recommendations relate to the insurability of the Named Insured and the coverage charge to be made. We do not make safety inspections, undertake to provide legal advice or opinions, or perform the

duty to any person or organization to provide for the health or safety of workers or the public, and we do not warrant that conditions of the Named Insured's premises or other working environment under the Named Insured's control are safe or healthy, or comply with any or all federal, state, county, or local laws, regulations, codes, or standards. This limitation of our service applies not only to us, but also to any rating, advisory rating service, or similar organization or individuals that may provide insurance inspections, surveys, reports, or recommendations at the request of the Insurer.

N. Non-Assignable

No interest, coverage, or rights under this Policy may be assigned or transferred to any other person or entity without the prior written consent of the Insurer. This Policy is issued to the Named Insured as owned and managed at the time of the Application and does not transfer upon a change in ownership or management without prior written approval of the Insurer.

O. Changes

This Policy, including any Endorsements, contains all of the agreements between the Named Insured, Certificate Holder(s), and the Insurer concerning the insurance provided by this Policy. Coverage terms can be amended or waived only by an Endorsement issued by the Insurer.

Endorsements adding additional Insureds, coverage, or otherwise materially changing the Policy will require additional premium to be collected before the Endorsement will become effective. Any additional premium associated with an Endorsement will be calculated by the Insurer based upon its then current rates; although, no specific rate is guaranteed.

No changes or modifications to this Policy, as they relate to a Certificate Holder, can be made within 24 hours of the Certificate Holder's Move Date.

P. False or Fraudulent Claim

If an Insured makes any Claim under this Policy knowing such Claim to be false or fraudulent, as regards to amount or otherwise, this Policy shall become null and void and all coverage hereunder shall be forfeited.

Q. Reimbursement

In the event we pay a Claim and it is at any time determined there is no coverage under the Policy, we expressly reserve the right to seek reimbursement of any payments made to the Certificate Holder or on their behalf.

R. Agency

It is understood and agreed that any person acting on behalf of the Certificate Holder in relation to this Policy is an agent of the Certificate Holder and such person is aware of this Policy and its terms and conditions.

S. Terms and Conditions

The terms and conditions of this Policy must be reviewed and accepted by the Certificate Holder.

## SECTION V — DEFINITIONS

A. "Accident(al)" means an incident, event, or circumstance which is unexpected and unintended from the standpoint of any Insured.

B. "Address of Destination" means the specific physical address to which a Certificate Holder's personal property is to be delivered.

Powered by Prime Insurance Company

C. "Address of Origin" means the specific physical address from which a Certificate Holder's personal property is to be picked up. The Address of Origin may not include a warehouse or storage facility.

D. "Application" means the application submitted by or on behalf of the Named Insured to obtained coverage, and any information provided therewith.

E. "Authorized Moving Company" means a moving company authorized and approved by the Named Insured.

F. "Authorized Moving Company's Inventory List" means the itemized inventory of a Certificate Holder's personal property that is verified by an Authorized Moving Company on the Move Date and upon delivery.

G. "Auto" means a land motorized vehicle, trailer, or semi-trailer designed for travel on public roads, including any attached machinery or equipment.

H. "Certificate Holder" means the person or entity expressly designated as such on a Certificate of Insurance issued by the Insurer or InsurMedix.

I. "Certificate of Insurance" means a statement of insurance coverage issued by the Insurer or InsurMedix.

J. "Claim(s)" means any demand for payment presented under this Policy for Damage or Loss.

K. "Damage or Loss" means accidental direct physical loss of or damage to personal property.

L. "Declarations" means the summary of coverage provided in conjunction with this Policy setting forth essential terms that are expressly deemed a part of this Policy.

M. "Deductible" means the amount of Damage or Loss to personal property that must be exceeded before the Insurer owes any obligations under this Policy.

N. "Endorsement(s)" means any additional coverage or limitation of coverage contained in an attachment or addendum to this Policy. Endorsements are an indispensable and indivisible part of this Policy.

O. "Hazardous Materials" means any nuclear, radioactive, toxic, or explosive material, substance, or waste, and any by-products thereof, and the explosive, toxic, and dangerous properties of such material, substance, or waste and any by-products thereof.

P. "Insurer" means the companies that underwrite this Policy and which are expressly designated on the Declarations.

Q. "Limit of Insurance" means the maximum amount the Insurer will be obligated to pay for covered Damage or Loss, the amount of which is set forth in the Declarations.

R. "Move Date" means the date upon which a Certificate Holder's personal property is to be picked up by an Authorized Moving Company at the Address of Origin.

S. "Policy" means the Policy issued by the Insurer to the Named Insured, including all Endorsements thereto.

T. "Policy Period" means the period of time designated by the effective date and expiration date as set forth in the Declarations.

U. "Pollutant(s)" means any solid, liquid, gaseous, thermal, electrical, or sound irritant or contaminant, in any form, including but not limited to lead, asbestos, formaldehyde, radon, any controlled chemical substance, any substance recognized to be harmful or toxic to persons, property or the environment, or any substance listed as a hazardous substance by any governmental agency. "Pollutant(s)" also includes smoke, vapor, soot, fumes, acids, alkalis, chemicals, garbage, refuse, and

MOVING INSURANCE

Powered by Prime Insurance Company

waste. Waste includes materials to be recycled, reconditioned, or reclaimed, as well as disposed of.

V. "Total Loss" means the cost to repair an item is greater than the declared value or market value of the item.

W. "Valued Inventory" means the itemized inventory of a Certificate Holder's personal property that is submitted to InsurMedix prior to the Certificate Holder's Move Date, and which includes a declared value for each listed item.

## SECTION VI — SEVERABILITY

The provisions of this Policy are severable. If any portion, provision, or part of this Policy is held, determined, or adjudicated to be invalid, unenforceable, or void for any reason whatsoever, each such portion, provision, or part shall be severed from the remaining portions, provisions or parts of this Policy and shall not affect the validity or enforceability of any remaining portions, provisions, or parts.

## SECTION VII — MUTUAL AFFIRMATION

Pursuant to the signature, facsimile or otherwise, appearing on the Application, quote, Policy, or any other document provided to the Insurer to obtain insurance coverage, the parties affirm that all documents serve to embody and articulate the entire agreement between the parties hereto, and that the parties unqualifiedly accept and agree to abide by the terms and conditions of this Policy.

## SECTION VIII — REIMBURSEMENT

In the event we provide coverage for a Claim and it is at any time determined that the Claim, or any part thereof, is not covered under the Policy, we expressly reserve the right to seek reimbursement of any payment associated with such Claim.

## SECTION IX — U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL NOTICE TO CERTIFICATE HOLDERS

No Company shall be deemed to provide cover and no Company shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that Company to any sanction, prohibition or restriction under the United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

## SECTION X — JURISDICTION AND VENUE

Any and all suits, actions and proceedings relating to this Policy must be filed in Salt Lake County, Utah, United States.

X____________________________________

By signing this document, I accept all the above listed terms and conditions of this insurance.

# Exhibit B

Gmail Brice Wilkerson <brice.wilkerson92@gmail.com>

# Your Moving Estimate 6237246

1 message

**Joseph - Menards Moving Storage** <dispatch@menardsmoving.com> Fri, Jul 26, 2024 at 1:13 PM
Reply-To: Joseph - Menards Moving Storage <dispatch@menardsmoving.com>
To: Brice Wilkerson <brice.wilkerson92@gmail.com>

MENARDS

## Binding Moving Estimate

**Job No: V6237246**

| | |
|---|---|
| **Menards Moving & Storage**<br>6801 Lake Worth Road<br>Greenacres, FL 33467<br>US DOT: 4072455 MC: 1547461 | **Customer Rep:** Rizzo<br>**Phone:** 888-209-7075 Ext. 1009<br>**Direct:** 5617635716<br>**Email:** joseph.r@menardsmoving.com<br>**Web:** https://www.menardsmoving.com |

| Moving From | Moving To |
|---|---|
| **Brice Wilkerson**<br>2331 Rockwood Ave<br>Baldwin, NY 11510<br>Phone: 425-445-5364<br>brice.wilkerson92@gmail.com | **Brice Wilkerson**<br>5409 Seahurst Ave<br>Everett, WA 98203<br>Phone: 425-445-5364 |

**Relocation Details**

| | |
|---|---|
| Job No: | V6237246 |
| Estimate Date: | 07/26/2024 |
| Representative: | Rizzo |
| Visual Type: | Waived |
| The shipper has elected to waive the physical and virtual survey and signed the waiver agreement before the shipment is loaded in accordance with 49 CFR 375.401 (a). | |
| Move Type: Residential | Long Distance, 2943 miles |
| Estimated Volume: | 1600 cf. (11200 lbs) |
| Estimated Rate: | $3.75 per cf |
| Move Day: | Monday/Tuesday |
| Move Date: | 08/05/2024-08/06/2024 |
| Created On: | 07/10/2024 |

**Relocation Estimate**

| | |
|---|---|
| Basic Estimate Price | $6000.00 |
| Fuel Surcharge: 9.00 % | $540.00 |
| Full packing with White Glove Service | $1600.00 |
| Binding Estimate Fee | $2000.00 |
| Packing Materials | $255.00 |
| Basic Valuation Protection: $0.60 per lbs. per article | $0.00 |
| Total Moving Estimate | $10395.00 |
| Customer Payment | $4435.89 |

**Confirm your move via:**
Online Electronic Signature

**Full Value Protection Amount of Liability: $67,200.00 (Optional)**

| Deductible Levels: | $0 | $250 | $500 | $750 | $1000 | $1500 |
|---|---|---|---|---|---|---|
| Valuation Charge: | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Total Estimate Plus Valuation Charge: | $10395.00 | $10395.00 | $10395.00 | $10395.00 | $10395.00 | $10395.00 |
| Customer's Initials: | x________ | x________ | x________ | x________ | x________ | x________ |

**WARNING:** If a moving company loses or damages your goods, there are 2 different standards for the company's liability based on the types of rates you pay. **BY FEDERAL LAW, THIS FORM MUST CONTAIN A FILLED-IN ESTIMATE OF THE COST OF A MOVE FOR WHICH THE MOVING COMPANY IS LIABLE FOR THE FULL (REPLACEMENT) VALUE OF YOUR GOODS** in the event of loss of, or damage to, the goods. This form may also contain an estimate of the cost of a move in which the moving company is liable for **FAR LESS** than the replacement value of your goods, typically at a lower cost to you. You will select the liability level later, on the bill of lading (contract) for your move. Before selecting a liability level, please read Your Rights and Responsibilities When You Move, and Ready to Move Brochure provided by the moving company, and seek further information at the government website www.protectyourmove.gov

## Articles List 29 Items, 172 Pieces

| Qty | Items | Qty | Items | Qty | Items |
|---|---|---|---|---|---|
| | **General** | 1 | PORTABLE AC UNIT | 1 | AGILITY SET (PVC) |
| 50 | BOX, LARGE PBO 18X18X24 | 1 | SOFA, SECTIONAL-3 PIECE | 5 | DOG KENNEL |
| 60 | BOX, MED. PBO 18X18X18 | 1 | TABLE, COFFEE (LG.) | 2 | GROOMING TABLE |
| 2 | CHINA CAB, 2 PIECE | 1 | TABLE, DINING | 1 | LG. PICTURE |
| 2 | DESK CHAIR, LARGE | 1 | TREADMILL | 1 | MIRROR, REGULAR |
| 1 | DESK, REGULAR | 1 | TV FLAT SCREEN - 60" - 75" | 3 | MOP/BROOM |
| 1 | DOG BATH | 1 | XL BOX (KITCHEN SINK) | 2 | PADDED KENNEL |
| 1 | FREEZER/FRIDGE | | **Quality Assurance** | 23 | PLASTIC BIN, MED. |
| 1 | HEADBOARD | 1 | 15PC FOLDING DOG FENCE 3' | 1 | SNOWBOARD |
| 1 | MATTRESS (QUEEN) | 1 | 6PC PEG BOARD | 2 | SUITCASE, LG. |
| | | | | 3 | VACUUM CLEANER |

## Packing Materials List

| Qty | Material | Unit Price $ | Qty | Material | Unit Price $ | Qty | Material | Unit Price $ |
|---|---|---|---|---|---|---|---|---|
| 2 | Specialpack-chinacabinet | 75.00 | 1 | Specialpack-sofa3 | 40.00 | 1 | Tv.packflatscreen-33-60 | 65.00 |

## Understanding Your Estimate

Thank you for choosing Menards Moving And Storage . We are happy to provide you, the Customer, this estimate based on the specific list of items and services you requested at the time this estimate was prepared. This **BINDING** estimate is based upon the specific items to be moved and services ordered as listed on the estimate. ***Your estimated price will not change unless you order additional services, add additional items to be moved, or additional weight or cubic feet to be moved which are not specifically listed on this estimate.*** This document is an estimate only and not a contract for moving services; it is only binding for the specific services and items listed here within; any deviation of the services listed and ordered will result in a new estimate being issued. In such cases, in accordance with 49 CFR § 375.403(a)(6)(ii) a new estimate must be executed prior to any services being performed.

This estimate includes the following:

- Professional Door-to-Door service.
- Expert advice and guidance throughout the course of your move.

- Disassembly of all standard furniture required for safe movement at the origin.
- Reassembly for all items disassembled by the movers on the day of pick-up at destination(excluding: cribs, toddler beds an children's bunk beds).
- Wrapping of all furniture with quilted moving blankets.
- Itemized inventory indicating condition at origin of items.
- Loading & unloading of all goods.
- All transportation, taxes, tolls, mileage, and fuel surcharges.
- Standard cargo protection up to $10,000 based on 0.60 cents per lb. per article; if selected at the time the estimate is prepared, estimated cost of the full value protection option at varying deductible levels (these are only estimates and the actual cost is determined by your selection on the carrier's bill of lading according to carrier's tariff).
- No elevator charges.
- No charge for packing tape and moving pads.
- No date change penalties for requests that are made 7 days prior to the first available pickup date.

**DELIVERY SPREAD (ESTIMATED)**

| | |
|---|---|
| **0 - 500 MILES** | **1-7 BUSINESS DAYS** |
| **501 - 1,000 MILES** | **3-10 BUSINESS DAYS** |
| **1,001 - 1,500 MILES** | **5-14 BUSINESS DAYS** |
| **1,501 - 2,000 MILES** | **6-21 BUSINESS DAYS** |
| **2,001+ MILES** | **7-21 BUSINESS DAYS** |

Additional fees and Accessorial Services (if applicable to the move):

- Flights of Stairs: First flight included, Each additional flight $75.00 (10 steps = 1 flight)
- Non exclusive Elevator Fee = $75
- Specialized bulky items such as: kayak, pool table, playground equipment, etc.
- Long carry service: Each additional 75 feet = $125 (First 75 feet included)
- Shuttle service: $1.00 per cu.ft. (minimum of $500)
- Packing of fragile/delicate items (such as TVs, glass, etc.); packing and crating services not already listed within proposal; loading of bulky items (such as a motorcycle).
- Packing labor and supplies such as boxes, tape, bubble wrap, etc.
- Storage service: $0.50 per cu.ft. per month after first 30 days (minimum of $250 monthly)
- Appliance servicing set up or connecting
- Rigging, hoisting, or lowering of property

TERMS AND CONDITIONS:

1. THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE TERMS AND CONDITIONS CONTAINED HEREIN, REPRESENTS THE ENTIRE UNDERSTANDING AND AGREEMENT BETWEEN MENARDS MOVING &

STORAGE LLC, (HERE AFTER MENARDS) AND CUSTOMER WITH RESPECT TO THE SUBJECT MATTER HEREOF AND SUPERSEDES ALL OTHER NEGOTIATIONS, UNDERSTANDINGS AND REPRESENTATIONS (IF ANY) MADE BY AND BETWEEN SUCH PARTIES, INCLUDING ANY REPRESENTATIONS MADE BY ANY ESTIMATOR. IN THE EVENT OF ANY CONFLICT BETWEEN THE TERMS OF ANY ESTIMATE AND THE BILL OF LADING, THE TERMS OF THE BILL OF LADING SHALL CONTROL. THIS AGREEMENT MAY NOT BE AMENDED, SUPPLEMENTED OR WAIVED ORALLY, BUT ONLY IN WRITING, SIGNED BY BOTH MENARDSAND CUSTOMER AND MAKING SPECIFIC REFERENCE TO THIS AGREEMENT.

2. CUSTOMER MAY NOT ASSIGN ITS RIGHTS OR OBLIGATIONS UNDER THIS AGREEMENT WITHOUT THE PRIOR WRITTEN CONSENT OF MENARDS MOVING & STORAGE LLC.

3. NOTHING IN THIS AGREEMENT, WHETHER EXPRESSED OR IMPLIED, IS INTENDED TO CONFER ANY RIGHTS OR REMEDIES ON ANY PERSON OTHER THAN THE PARTIES HERETO AND THEIR RESPECTIVE LEGAL REPRESENTATIVES, HEIRS AND PERMITTED ASSIGNS, NOR IS ANYTHING IN THIS AGREEMENT INTENDED TO RELIEVE OR DISCHARGE THE OBLIGATION OR LIABILITY OF ANY THIRD PERSON TO ANY PARTY TO THIS AGREEMENT, NOR SHALL ANY PROVISION GIVE ANY THIRD PERSON ANY RIGHT OF SUBJUGATION OR ACTION OVER OR AGAINST ANY PARTY TO THIS AGREEMENT.

4. THE CUSTOMER HAS HIRED MENARDS AS A MOVING COORDINATOR/SHIPPER AGENT/BROKER. WHEN MENARDS IS ACTING AS A SHIPPER AGENT ONLY, MENARDS IS NOT RESPONSIBLE FOR ANY ACTS OR OMISSIONS OF THE CARRIER OR ITS EMPLOYEES OR AGENTS. UNLESS MENARDS ACTS AS THE CARRIER, THE CUSTOMER MUST PURSUE THE CARRIER FOR ALL CLAIMS FOR PROPERTY DAMAGE AND PERSONAL INJURY OR DEATH, INCLUDING WITHOUT LIMITATION, ANY CLAIMS FOR DAMAGE TO PROPERTY, LOST OR STOLEN GOODS, DELAYED PICKUP OR DELIVERY, ACTIONS OF ESTIMATORS, DRIVERS, PACKERS OR MOVERS, OR OTHER TYPES OF CLAIMS. MENARDS WILL ACT ON BEHALF OF THE CUSTOMER IN RESOLVING ANY CLAIMS OR DELAY ISSUES WITH THE CARRIER. THE CARRIER MAXIMUM LIABILITY IS LIMITED TO THE LESSER OF THE FOLLOWING: (A) THE AMOUNT OF THE ACTUAL LOSS OR DAMAGE, (B) AN AMOUNT EQUAL TO SIXTY CENTS (60 CENTS) PER POUND MULTIPLIED BY THE ACTUAL WEIGHT (IN POUNDS) OF THE LOST OR DAMAGED ARTICLE; OR (C) THE LUMP SUM DECLARED VALUE.

5. AS A PROPERLY LICENSED INTERSTATE MOVING COORDINATOR/SHIPPER AGENT/BROKER, MENARDS WILL COORDINATE AND ARRANGE FOR THE TRANSPORTATION OF HOUSEHOLD GOODS BY ANY FMCSA AUTHORIZED MOTOR CARRIER, WHOSE CHARGES WILL BE DETERMINED BY ITS PUBLISHED TARIFF. ALL ESTIMATED CHARGES AND FINAL ACTUAL CHARGES WILL BE BASED UPON THE CARRIER TARIFF WHICH IS AVAILABLE FOR INSPECTION FROM THE CARRIER UPON REASONABLE REQUEST.

6. CUSTOMER WILL BE SUBJECT TO ALL APPLICABLE LAWS AND THE GENERAL TERMS AND CONDITIONS OF MENARDS OR THE ALTERNATE CARRIER, WHICH SHALL INCLUDE WITHOUT LIMITATION, A REQUIREMENT THAT PAYMENT IN FULL OF ALL CHARGES IS DUE BEFORE UNLOADING OF THE GOODS IN ACCORDANCE WITH THE CARRIER LAWFUL LIEN ON THE PROPERTY.

7. AS THE CUSTOMER, I AGREE TO PAY THE TOTAL CHARGES FOR THE MOVING COORDINATOR SERVICES TO BE PROVIDED BY MENARDS. I UNDERSTAND AND AGREE THAT MY DEPOSIT/FEE REPRESENTS ONLY A PORTION OF MY TOTAL ESTIMATED SERVICE CHARGES, FOR SCHEDULING AND ROUTING PURPOSES. MY DEPOSIT/FEE IS NON-REFUNDABLE AFTER PLACING MY RESERVATION FOR SCHEDULING PURPOSES UNLESS I CANCEL WITHIN THE PARAMETERS OF THE AGREED TO CANCELLATION POLICY. ALL REQUESTS TO CHANGE MY PICKUP DATE, OR PLACE MY MOVE ON HOLD, MUST BE MADE AT LEAST 5 BUSINESS DAYS (SATURDAY, SUNDAYS AND HOLIDAYS EXCEPTED) PRIOR TO THE PACK OR LOAD DATE (WHICHEVER APPLIES) LISTED ABOVE. IF OUTSIDE MY CANCELLATION WINDOW I AM ENTITLED TO RECEIVE A CREDIT OF MY DEPOSIT FOR A FUTURE INTERSTATE MOVE WHICH I MUST USE WITHIN A 12 MONTH PERIOD FROM THE DATE OF MY ORIGINAL RESERVATION. ALL DEPOSITS WILL SHOW ON YOUR BILLING CYCLE UNDER MENARDS. BY SIGNING THIS CONTRACT, I ACKNOWLEDGE THAT I WILL NOT FOR ANY REASON DO A CHARGE BACK TO ANY CREDIT CARD PAYMENTS.

8. SHOULD YOU ELECT TO CANCEL YOUR MOVE WITH MENARDS MOVING AND STORAGE , YOU MUST EMAIL SUPPORT@MENARDSMOVING.COM WITHIN 72 HOURS OF SIGNING THE CONTRACT TO INCUR NO ADDITIONAL FEES AND NO FURTHER OBLIAGATION TO PAY REMAINDER OF THE CONTRACT BALANCE .IF YOU CANCEL YOUR MOVE WITHIN 48 HOURS OF THE ORIGINALLY SIGNED CONTRACT, YOU WILL RECEIVE A FULL REFUND AS LONG AS YOU ARE NOT BOOKING YOUR MOVE WITHIN (5) DAYS OF YOUR PICKUP DATE. IF YOUR MOVE IS BOOKED WITHIN (5 )DAYS OF YOUR SCHEDULED MOVE DATE ALL DEPOSITS ARE NON-REFUNDABLE, HOWEVER, ALL DEPOSITS MAY BE APPLIED TO A FUTURE MOVE WITH MENARDS FOR UP TO 12 MONTHS FROM THE DATE OF THE ORIGINAL SIGNED CONTRACT.

9. CUSTOMER HAS ELECTED A "BINDING TO NOT EXCEED" PRICE, THE TOTAL COST WILL NOT EXCEED THE ESTIMATED AMOUNT; PROVIDED, HOWEVER THAT CUSTOMER'S ITEMS ARE OF STANDARD DIMENSIONS AND MENARDS IS PROVIDED WITH AN ACCURATE DESCRIPTION OF THE SERVICES TO BE PERFORMED. CUSTOMER HAS REQUESTED TO HAVE AN ESTIMATE PROVIDED FOR HIS/HER HOUSEHOLD GOODS RELOCATION, IN ACCORDANCE WITH 49 CFR 371.113(C)(1), CUSTOMER AGREES TO WAIVE A PHYSICAL SURVEY OF THE HOUSEHOLD GOODS, AND ALTERNATIVELY AGREES TO RECEIVE A BINDING TO NOT EXCEED ESTIMATE BASED UPON THE SHIPPER PROVIDED ITEM LIST OF PROPERTY TO BE TRANSPORTED. IF ANY ADDITIONAL PIECES, PACKING SERVICES, WEIGHT , CUBIC FOOT OR LABOR SERVICES ARE ADDED AT THE ORIGIN OR DESTINATION TO THOSE QUOTED, THE CUSTOMER SHALL BE CHARGED FOR THESE SERVICES AT THE GOVERNING TARIFF RATES. CUSTOMER UNDERSTANDS THAT MENARDS HAS A 2000 LBS MINIMUM ON ALL SHIPMENTS. ANY SHIPMENT BELOW 2000 LBS. WILL BE CHARGED AT THE 2000 LBS RATE. THE PRICE INCLUDES ALL FUEL SURCHARGES, TOLLS, LOAD AND UNLOAD, BASIC DISASSEMBLY AND REASSEMBLY OF STANDARD FURNITURE ITEMS, UP TO 75 FEET OF LONG CARRY AT ORIGIN AND DESTINATION AND 1 FLIGHT(10 STEPS) OF STAIRS. ELABORATE FURNITURE ITEMS THAT NEED TO BE DISASSEMBLED AND/OR REASSEMBLED MAY REQUIRE 3RD PARTY SERVICING OR ADDITIONAL LABOR AND SHOULD BE DISCLOSED TO YOUR ESTIMATOR AND INCLUDED IN YOUR ESTIMATE. DISCONNECTING AND/OR RECONNECTING OF APPLIANCES IS NOT INCLUDED IN THE PRICE. REASSEMBLY IS SUBJECT TO THE AVAILABILITY OF TOOLS AND/OR ALL PARTIES BEING AVAILABLE. THE PACKING AND UNPACKING OF BOXES IS ONLY INCLUDED IN THE PRICE IF IT IS ITEMIZED IN THE PACKING AND UNPACKING SECTION OF YOUR ESTIMATE; ALL MATERIALS/LABOR FOR UNDISCLOSED ITEMS WILL BE EXTRA. ALL FURNITURE (ie: DRESSERS, NIGHTSTANDS, ARMOIRS ETC) MUST BE EMPTIED AND CAN NOT BE UTILIZED FOR PACKING PURPOSES.

10. ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT, WHETHER SO EXPRESSED OR NOT, SHALL BE BINDING UPON, INURE TO THE BENEFIT OF, AND BE ENFORCEABLE BY THE PARTIES AND THEIR RESPECTIVE ADMINISTRATORS, EXECUTORS, LEGAL REPRESENTATIVES, HEIRS, SUCCESSORS AND PERMITTED ASSIGNS.

11. CUSTOMER SHALL INDEMNIFY AND HOLD HARMLESS MENARDS, AND ITS SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS AND IT'S AFFILIATES FROM AND AGAINST ANY AND ALL ACTIONS, CLAIMS, SUITS, LIABILITIES, PROCEEDINGS, PENALTIES, FINES, COSTS, AND EXPENSES (INCLUDING ALL REASONABLE ATTORNEY FEES) RELATING DIRECTLY OR INDIRECTLY FROM ANY BREACH OF THIS AGREEMENT BY CUSTOMER.

12. IT IS AGREED BY THE PARTIES AS MANDATORY THAT THIS AGREEMENT SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF FLORIDA WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAW. ANY DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE BROUGHT IN THE COURTS OR RECORD OF THE STATE OF FLORIDA IN PALM BEACH COUNTY OR THE COURT OF THE UNITED STATES, SOUTHERN DISTRICT OF FLORIDA IN PALM BEACH FLORIDA. IF ANY PARTY DOES NOT HAVE A REGISTERED AGENT TO ACCEPT SERVICE OF PROCESS IN FLORIDA OR IS NOT OTHERWISE SUBJECT TO SERVICE AFTER REASONABLE ATTEMPTS, THEN SUCH PARTY AGREES TO ACCEPT SERVICE OF PROCESS BY U.S. MAIL.

13. IN THE EVENT OF ANY CONTROVERSY ARISING UNDER OR RELATING TO THE INTERPRETATION OR IMPLEMENTATION OF THIS AGREEMENT OR ANY BREACH THEREOF, MENARDS SHALL BE ENTITLED TO

RECOVER ALL OF ITS COURT COSTS, COLLECTION FEES, EXPENSES AND REASONABLE ATTORNEY FEES (INCLUDING, WITHOUT LIMITATION, ALL PRE-TRIAL, TRIAL AND APPELLATE PROCEEDINGS), IN ADDITION TO ANY OTHER RELIED TO WHICH IT MAY BE ENTITLED. IN THE EVENT THAT MENARDS PURSUES THE COLLECTION OF ANY AMOUNTS DUE TO IT UNDER THIS AGREEMENT, MENARDS MAY RECOVER THE FULL TARIFF RATE ON ALL GOODS AND SERVICES PROVIDED, IN ADDITION TO ALL OTHER REMEDIES AVAILABLE TO IT AT LAW AND IN EQUITY.

14. ALL PICKUP, LOAD AND/OR DELIVERY DATES ARE ONLY ESTIMATES. MENARDS WILL NOT BE RESPONSIBLE FOR LOSS OR DAMAGES INCURRED BY UNAVOIDABLE DELAY. MENARDS WILL ACT ON THE BEHALF OF THE CUSTOMER IN RESOLVING ANY CLAIMS OR DELAY ISSUES WITH THE CARRIER. THERE ARE ABSOLUTELY NO GUARANTEES MADE, EXPRESSED OR IMPLIED REGARDING PACK, LOAD, AND/OR DELIVERY DATES.

15. MOTOR CARRIER NEUTRAL ARBITRATION PROGRAM: THE MOTOR CARRIER NEUTRAL ARBITRATION PROGRAM HAS BEEN DESIGNED TO GIVE NEITHER PARTY ANY SPECIAL ADVANTAGE. IF A DISPUTE ARISES BETWEEN THE CARRIER AND THE SHIPPER ARBITRATION MAY BE A MUTUALLY BENEFICIAL ALTERNATIVE TO HELP RESOLVE THE DISPUTE. SECTION 49 U.S.C. SECTIONS 375.211 PROVIDES THAT A MOVER MUST HAVE A PROGRAM IN PLACE TO PROVIDE SHIPPERS WITH AN ARBITRATION ALTERNATIVE. ARBITRATION IS OPTIONAL AND NOT REQUIRED UNDER FEDERAL LAW. SUMMARY OF THE ARBITRATION PROCESS: ARBITRATION IS AN ALTERNATIVE TO COURTROOM LITIGATION. IT PROVIDES EACH PARTY TO THE DISPUTE TO PRESENT THEIR CASES AND ALLOWS A NEUTRAL THIRD PARTY ARBITRATOR TO MAKE DECISIONS AS TO THE MERIT OF EACH SIDE'S CASE. ARBITRATION SUBJECT TO THIS AGREEMENT SHALL BE CONDUCTED VIA WRITTEN SUBMISSION AND, SUBJECT TO THE ARBITRATOR DISCRETION, THROUGH TELEPHONIC APPEARANCE. AFTER THE INITIAL FILING FEES HAVE BEEN PAID AND THE ARBITRATOR SELECTED, THE INITIATING PARTY OR (CLAIMANT) MUST SUBMIT A WRITTEN BRIEF SUMMARIZING THEIR LEGAL POSITION AND FACTUAL CLAIMS. ALL SUPPORTING DOCUMENTATION MUST BE INCLUDED WITH THE INITIAL ARBITRATION BRIEF. COPIES OF ALL DOCUMENTS MUST BE SUBMITTED TO ALL PARTIES INVOLVED IN THE ARBITRATION. UPON RECEIPT OF THE CLAIMANT'S ARBITRATION BRIEF AND SUPPORTING DOCUMENTS, THE RESPONDING PARTY OR (RESPONDENT) WILL HAVE 30 DAYS TO FILE THEIR RESPONSIVE ARBITRATION BRIEF AND SUPPORTING DOCUMENTATION. FURTHER DEADLINES AND TIME TABLES ARE SUBJECT TO THE ARBITRATORS DISCRETION. LEGAL EFFECTS; IF THE ARBITRATION ALTERNATIVE IS CHOSEN, THEN ANY DECISION MADE BY THE ARBITRATOR MAY BE BINDING. ADDITIONALLY, AN ARBITRATION DECISION MAY NOT BE APPEALED IN A COURT OF LAW. ALL PARTIES AGREE THAT THE ARBITRATORS DECISION WILL BE BASED EXCLUSIVELY ON THE GOVERNING UNITED STATES FEDERAL LAW WITHOUT REGARD TO CONFLICTING STATE LAWS OR REGULATIONS. APPLICABLE COSTS EACH PARTY IS RESPONSIBLE FOR THEIR OWN COST ASSOCIATE ED WITH ARBITRATION. A BENEFIT TO THE ARBITRATION ALTERNATIVE MAY BE THAT IT IS LESS EXPENSIVE THAN TRADITIONAL LITIGATION. EACH PARTY IS RESPONSIBLE FOR 50% OF THE COST ASSOCIATED WITH SECURING THE ARBITRATOR AND 100% OF THEIR OWN EXPENSES, INCLUDING BUT NOT LIMITED TO ATTORNEY FEES.

16. UPON BOOKING, A 30% OR MORE DEPOSIT FEE IS REQUIRED TO BE PAID BY ELECTRONIC CHECK, ACH, ZELLE, CASH APP, CREDIT/DEBIT CARD, BANK WIRE OR DIRECT DEPOSIT INTO COMPANY CHECKING ACCOUNT. UPON PICKUP, CARRIER MAY COLLECT UP TO 70% OF THE REMAINING BALANCE. PAYMENT WILL BE DUE IN THE FORM OF CASH, CERTIFIED CHECK OR POSTAL MONEY ORDER. THE REMAINING BALANCE MUST BE PAID IN FULL UPON DELIVERY BY CASH OR POSTAL MONEY ORDER. THE CARRIER RESERVES THE RIGHT TO COLLECT UP TO 70% OF THE BALANCE DUE PRIOR TO THE GOODS LEAVING THE ORIGIN STATE. SUBJECT TO FEDERAL LAW, PAYMENT IN FULL OF ALL CHARGES IS REQUIRED PRIOR TO UNLOADING. IF PAYMENT IS NOT MADE IN FULL THEN THE CARRIER MAY PLACE YOUR ITEMS IN STORAGE , IN WHICH CASE THE CUSTOMER WILL BE RESPONSIBLE FOR ALL STORAGE AND REDELIVERY FEES .

17. THE CUSTOMER UNDERSTANDS AND AGREES THAT SHOULD THE CUSTOMER FAIL TO EXECUTE OR RETURN THIS AGREEMENT, BY ALLOWING A CARRIER DESIGNATED BY MENARDS TO PICK UP THE CUSTOMER'S BELONGINGS, THE CUSTOMER EXPRESSLY AGREES AND CONSENTS TO THE TERMS CONTAINED IN THIS AGREEMENT.

18. CUSTOMER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THE GOODS AND SERVICES OBTAINED HERE UNDER, THE MOVE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (VERBAL OR WRITTEN) OR ACTIONS OF MENARDS OR THE MOVER. CUSTOMER ACKNOWLEDGES THAT THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT TO MENARDS TO ENTER INTO THIS AGREEMENT.

19. MENARDS, REQUIRES THAT THE CUSTOMER MUST FIRST ATTEMPT, TO RESOLVE ALL DISPUTES IN WRITING, DIRECTLY WITH MENARDS, PRIOR TO INITIALIZING A DISPUTE/REVERSAL WITH THEIR ISSUING CREDIT CARD PROVIDER. THE CUSTOMER MUST PROVIDE A WRITTEN DESCRIPTION EVIDENCING ANY AND ALL BREACHES OF THE CONTRACT BY E-MAIL TO MENARDS, AT SUPPORT@MENARDSMOVING.COM THE CUSTOMER AGREES THAT FAILURE TO PROVIDE WRITTEN DOCUMENTATION CLAIMING THAT THE TERMS AND CONDITIONS WERE NOT ADHERED TO BY MENARDS, FORFEITS THE RIGHT TO DISPUTE THIS CLAIM WITH THEIR ISSUING CARD PROVIDER.

20. AS THE CUSTOMER, I AGREE THAT ANY REFUSAL OR DENIAL OF SERVICE, EITHER VERBALLY IN PERSON OR OVER THE PHONE, WILL BE TREATED AS A LATE CANCELLATION MADE OUTSIDE OF THE CANCELLATION WINDOW. I UNDERSTAND THAT NO REFUND WILL BE ISSUED IF I REFUSE OR DENY SERVICE DURING THE PICKUP WINDOW. IF I CLAIM THAT SERVICE WAS NOT RENDERED I MUST PROVIDE NOTICE OF ANY SERVICE FAILURE MADE BY MENARDS, IN WRITING TO SUPPORT@MENARDSMOVING.COM

21. MENARDS, WILL NOT BE REQUIRED AT ANY TIME TO PROVIDE PROOF OF SERVICE DENIAL. THIS WILL BE THE CUSTOMER RESPONSIBILITY. AS THE CUSTOMER, I AGREE TO THE APPLICABLE TERMS AND CONDITIONS RELATING TO PICK UP AND DELIVERY DATES DETAILED IN SECTION 14. I AGREE THAT MENARDS, DOES NOT HAVE THE ABILITY TO OBTAIN SIGNED DOCUMENTATION VERIFYING A SERVICE REFUSAL. AS THE CUSTOMER, I AGREE THAT MENARDS, WILL NOT BE REQUIRED TO PROVIDE PROOF OF SERVICE IN THE CASE OF A SERVICE DENIAL OR REFUSAL OF SERVICE. MENARDS, RESERVES THE RIGHT TO RETAIN THE DEPOSIT OF THE CUSTOMER WHO VERBALLY REFUSES OR DENIES SERVICE WITHOUT WRITTEN DOCUMENTATION.

22. AS THE CUSTOMER I AGREE TO ADDRESS MY CONCERNS PROFESSIONALLY WITH MY MOVING COORDINATOR, MENARDS, DIRECTLY. I AGREE THAT I WILL NOT EXPRESS MY CONCERNS OR EXPERIENCES WITH MENARDS, IN A MANNER THAT MAY DAMAGE THE COMPANY'S UPSTANDING NAME AND REPUTATION IN A PUBLIC FORUM. ANY DEFAMATION, VILIFICATION, OR TRADUCEMENT MADE WILL RESULT IN AN IMMEDIATE FORFEITURE OF MY DEPOSIT AND MY IMMEDIATE DENOUNCEMENT OF ANY CLAIMS MADE AGAINST MENARDS, I UNDERSTAND THAT I MAY EXPRESS MY OPINION AND EXPERIENCES PUBLICLY ONLY AFTER I HAVE GIVEN MENARDS, SUFFICIENT TIME TO ADDRESS MY CONCERNS, AND THE TERMS AND CONDITIONS OF THE CONTRACT ARE NOT UPHELD. ANY FALSE CLAIMS OR MISCONSTRUED FACTS I OFFER TO THE PUBLIC WHILE REQUESTING REFUND OR CLAIMS WILL FORFEIT THOSE CLAIMS IF I PUBLICLY ADDRESS THESE ISSUES WHILE CLAIMS OR REFUNDS ARE STILL BEING CONTESTED OR REVIEWED.

23. IN SIGNING THIS AGREEMENT, I THE CUSTOMER, AGREE THAT; MENARDS, HAS PROVIDED A DATED COPY OF THE ESTIMATE AND CHARGES AT THE TIME I SIGNED THE AGREEMENT. MENARDS, HAS PROVIDED ME WITH NOTIFICATION OF THE METHODS OF PAYMENT REQUIRED TO PAY THE MOTOR CARRIER FOR BALANCES DUE, WITH ALL COSTS AND CHARGES CLEARLY INDICATED ON THIS ESTIMATE, AND THE CHARGES REPRESENTED ON THIS ESTIMATE ARE ONLY FOR THE SERVICES AND INVENTORY SPECIFICALLY INDICATED ON THIS ESTIMATE. MENARDS SALES REPRESENTATIVE VERBALLY CONFIRMED IF ASKED THEIR ROLE AS A MOVING BROKER/COORDINATOR TO ME OVER THE PHONE PRIOR TO PLACING THIS RESERVATION. IN TURNING DOWN OR DENYING SERVICE I WILL NOT BE ENTITLED TO A REFUND OF MY DEPOSIT UNLESS MANAGEMENT APPROVES OTHERWISE.

24. MENARDS MOVING AND STORAGE DOES NOT PROVIDE ESTIMATES, CONTRACTS OR ARRANGEMENT OF SHIPMENTS FOR INTRASTATE OR LOCAL MOVES .

**Click on Online Electronic Signature to confirm your move online.**

If you no longer wish to receive emails from Menards Moving & Storage, please click on unsubscribe

# Exhibit C

US DOT #: 4094589
ICC/MC #: 1560604
Van #: 1
Order #: V6237846

Swift Moving Services LLC | 4851 Carolina Beach Road, Wilmington, NC, 28412
Tel: (843) 904-8471 | Email: contact@swiftmovingservice.co | swiftmovingservice.co

# NEW WRITTEN ESTIMATE - Page 1

Agreed Pick Up Date: 8-6-24
Actual Pick Up Date: 8-6-24
1st Available Delivery Date:
Delivery No Later Than:

| Origin Information | | Destination Information | |
|---|---|---|---|
| Customer Name: Brice Wilkerson | | Customer Name: Brice Wilkerson | |
| Address: 2331 Rockwood Ave | | Address: 5409 Seahurst Ave | |
| City: Balwin | State: NY Zip: 11510 | City: Everett | State: WA Zip: 98203 |
| Phone: | Email: | Phone: | Email: |

## Estimate Details

| | | | |
|---|---|---|---|
| Estimate Type: Please select and initial the type of estimate received | | BINDING | NON-BINDING |
| Reason for New Written Estimate: | Additional Items / Weight | Packing Services | Accessorial Services |
| New Estimate Made: | In Person / Prior to Loading ____ | By Phone / Prior to loading ____ | Other ____ |

DOCUMENTS: I hereby declare that I have received the publications: Ready to Move; Your Rights & Responsibilities When You Move; Claim Filing & Arbitration Program Information.

Customer Signature X [signature] Date/Time 8-6-24

REQUEST FOR NEW ESTIMATE: I, the customer, am requesting this New Estimate to be prepared by the movers at the pickup to include additional items / services that were not listed for my initial estimate. I understand that these new items / services will change the price of my move and I am in complete agreement. Further, I understand that if I do not agree with this New Estimate that the movers will provide services for only the initial inventory of items listed on the most recently signed estimate. My signature attests that this New Estimate is a true reflection of all the items to be moved and services required to complete the move thus far.

Customer Signature X [signature] Date/Time 8-6-24

CANCELLATION OF SERVICES: The customer has the right to cancel services penalty free within 3 days after receiving the Bill of Lading. The carrier has the right to cancel services ordered by the customer at its own discretion subject to the complete refund of prepaid deposits, EXCEPT: when cancellation is due to a change of order of origin for which the customer refuses to accept the adjusted rates. Customer may cancel services up to 3 Days before the scheduled move via written notification to contact@swiftmovingservice.co Customer must verify that the cancellation notice has been received for a complete refund of prepaid deposits. If services are canceled less than 3 Days before the scheduled move the customer shall forfeit prepaid deposits. Forfeited deposits will be used to pay for expenses incurred due to late notice of cancellation. If cancellation of service by carrier and/or customer occurs at the time of pick up, the customer will be held liable for the payment of all services rendered per the carrier's applicable tariff and at full tariff rates.

Customer Signature X [signature] Date/Time 8-6-24

## Payment Information

COLLECTION OF CHARGES: The carrier will collect 100% of a binding estimate or up to 110% of a non-binding estimate provided that no post contract services are required at destination. Any additional post contract services will be collected in full prior to the unloading of the shipment at destination. Pursuant to § 375.703, the carrier reserves the right to collect all post contract services in full in addition to 15% of all charges due in addition to the 100% of a binding estimate or 110% of a non-binding estimate if impracticable operations are required at time of delivery. The carrier reserves the right to collect 15% of all charges due in addition to the 100% of a binding estimate or 110% of a non-binding estimate if impracticable operations are required at time of delivery and 100% of post contract services prior to the unloading at time of delivery. METHOD OF PAYMENT: 40% is required at time of reservation of service paid by Visa, Mastercard, Cashier's Check, Personal Check, Postal Money Order, Cash, Venmo, Zelle, Cash App, Paypal, Wire Transfer. Upon arrival 50% of the balance must be paid at origin by Visa, Mastercard, Cashier's Check, Personal Check, Postal Money Order, Cash, Venmo, Zelle, Cash App, Paypal, Wire Transfer. Remaining balance must be paid in full prior to the unloading of the truck at destination by Postal Money Order, Cash, Zelle. 3% Transaction Fee applies to all Credit card payments. The carrier reserves the right to collect 15% of all charges due in addition to the 100% of a binding estimate or 110% of a non-binding estimate if impracticable operations are required at time of delivery. METHOD OF CONVERSION: Non-Binding Estimates will be calculated by the actual weight of a shipment supported by weight tickets. Binding Estimates will be calculated by utilizing the mandatory conversion formula of the actual cubic feet multiplied by 7.

TARIFF AVAILABILITY: The carrier's Tariff, by reference, is made a part of the Bill of Lading and is available for inspection at the carrier's facility. Carrier may furnish a copy of provisions of the tariff governing this shipment upon request.

## Declaration of Value

This estimate of charges includes Full Value Protection based on a valuation amount equal to $6.00 multiplied by the weight (in pounds) of your shipment subject to a minimum valuation amount of $6000.00. If you wish to declare higher value for your shipment than the minimum required by law, that amount must be entered here.
The Value of my Shipment is: $ ____ and the cost of the Full (Replacement) Value Protection will be included in the total estimated cost. If you wish to WAIVE the Full Value Protection and choose the lower level of protection, the total estimated cost of your move will be less. This is the Estimated cost of your move without Full Value Protection: $ ____

| $ Value | No Deduction | $250 Deductible | $500 Deductible | $750 Deductible | $1000 Deductible |
|---|---|---|---|---|---|
| $0 to $6,000 | $50 | $45 | $40 | $35 | $30 |
| $6,001 to $25,000 | $50 | $45 | $40 | $35 | $30 |
| $25001 to $50,000 | $50 | $45 | $40 | $35 | $30 |
| $50,001 to $75,000 | $50 | $45 | $40 | $35 | $30 |
| 75,001 to 100,000 | $50 | $45 | $40 | $35 | $30 |
| 100,001 - And Up | $50 | $45 | $40 | $35 | $30 |

Shipment Cu. Ft: ____ X 42 = Min Declared Value: $ ____
$ ____ Value: $ ____ /1000= ____ X FVP Rate
$ ____ = Cost: $ ____

## Service Description

| Service Description | | | Charges |
|---|---|---|---|
| Lbs. @$ | 2900 Cu. Ft. @$ 3.75 | | $ 10,875 |
| Fuel Surcharge 12% | 9% | | $ 978.75 |
| Packing Labor & Materials | | | $ |
| Bulky Articles Handling | | | $ |
| Stairs | Origin | Destination | $ |
| Elevator | Origin | Destination | $ |
| Long Carry | Origin | Destination | $ |
| Shuttle | Origin | Destination | $ |
| SIT | Origin | Destination | $ |
| Stg.Handling | Origin | Destination | $ |
| Extra Stop | Origin | Destination | $ |
| Extra Labor | Origin | Destination | $ |
| Waiting Time | Origin | Destination | $ |
| ~~Overnight~~ Other manager discount | Origin | Destination | $ 837.86 |
| ~~Redelivery~~ Other Glove packing | | | $ 1600 |
| Other Binding Estimate | | | $ 2000 |
| Other Material | | | $ 255 |
| FVP | Value $ | Ded. $ | $ |
| Estimated Applicable Charges | | | 14,870.89 |
| TARIFF DISCOUNTS: | | | $ |
| PREPAID DEPOSIT: | | | $ 4435.89 |
| TOTAL ESTIMATED CHARGES: | | | $ 10,435 |

WARNING: If a moving company loses or damages your goods, there are 2 different standards for the company's liability based on the types of rates you pay. BY FEDERAL LAW, THIS FORM MUST CONTAIN A FILLED-IN ESTIMATE OF THE COST OF A MOVE FOR WHICH THE MOVING COMPANY IS LIABLE FOR THE FULL (REPLACEMENT) VALUE OF YOUR GOODS in the event of loss of, or damage to, the goods. This form may also contain an estimate of the cost of a move in which the moving company is liable for FAR LESS than the replacement value of your goods, typically at a lower cost to you. You will select the liability level later, on the bill of lading (contract) for your move. Before selecting a liability level, please read "Your Rights and Responsibilities When You Move," provided by the moving company, and seek further information at the government website www.protectyourmove.gov.

The carrier or its agents, by signing this form, hereby accepts the new estimate and agrees to perform service as outlined herein.

[signature] Carrier Signature 8-6-24 Date/Time

The customer or its authorized representative, by signing this form, hereby accepts the new estimate and agrees to pay the charges for the services as outlined herein.

X [signature] Customer's/ Representative's Signature 8-6-24 Date/Time

US DOT #: [illegible]
ICC/MC #: [illegible]
Van #: 1
Order #: V6237246

Swift Moving Services LLC | 4651 Carolina Beach Road, Wilmington, NC 28412 | Tel: [illegible] | Email: [illegible] | swiftmovingservice.co

# INTERSTATE BILL OF LADING

Agreed Pick Up Date: 8-6-24
Actual Pick Up Date: 8-6-24
1st Available Delivery Date:
Delivery No Later Than:

Interlining Carrier / Agent
Address
Contact Phone

## Origin Information

Customer Name: Brice Wilkerson
Address: 2331 Rockwood Ave
City: Baldwin State: NY 11510
Primary Phone
Secondary Phone
Contact Person En Route: [illegible]

## Destination Information

Customer Name: Brice Wilkerson
Address: 6409 Seahurst Ave
City: Everett State: WA 98203
Primary Phone
Secondary Phone
Phone
Fax

## Valuation Information

THE CONSUMER MUST SELECT ONE OF THESE OPTIONS FOR THE CARRIER'S LIABILITY FOR LOSS OR DAMAGE TO YOUR HOUSEHOLD GOODS

THE CONSUMER CUSTOMER'S DECLARATION of VALUE
THIS IS A TARIFF LEVEL OF CARRIER LIABILITY – IT IS NOT INSURANCE

OPTION 1. The Cost Estimate that you receive from your mover MUST INCLUDE Full (Replacement) Value Protection for the articles that are included in your shipment. If you wish to waive the Full (Replacement) Level of protection you must complete the WAIVER of Full (Replacement) Value Protection shown below.

Full (Replacement) Value Protection is the most comprehensive plan available for protection of your goods. If any article is lost, destroyed or damaged while in your mover's custody, your mover will, at its option, either 1) repair the article to the extent necessary to restore it to the same condition as when it was received by your mover, or pay you for the cost of such repairs, or 2) replace the article with an article of like kind and quality, or pay you for the cost of such a replacement. Under Full (Replacement) Value Protection, if you do not declare a higher replacement value on this form prior to the time of shipment, the value of your goods will be [illegible] to be equal to $6.00 multiplied by the weight (in pounds) of the shipment, subject to a minimum valuation for the shipment of $[illegible]. Under this option the cost of your move will be comprised of a base rate plus an added cost reflecting the cost of providing this full value cargo liability protection for your shipment.

If you wish to declare a higher value for your shipment than these default amounts, you must indicate that value here. Declaring a higher value may increase the valuation charge in your cost estimate.

The Total Value of my shipment is:

$______________________ (to be provided by the customer)

Dollar Estimate of the cost of your move at Full (Replacement) Value Protection:

$______________________ (to be provided by carrier)

I acknowledge that for my shipment I have 1) ACCEPTED the Full (Replacement) Level of protection included in the estimate and declared a higher total value of my shipment (if appropriate); and 2) received a copy of the "Your Rights and Responsibilities When You Move" brochure explaining these provisions.

X______________________ (Customer's Signature & Date)

———————— OR ————————

Option 2 – WAIVER of Full (Replacement) Value Protection. This lower level of protection is provided at no additional cost beyond the base rate, however it provides only minimal protection that is considerably less than the average value of household goods. Under this option, a claim for any article that may be lost, destroyed or damaged while in your mover's custody will be settled based on the weight of the individual article multiplied by 60 cents. For example, the settlement for an audio component valued at $1000 that weighs 10 pounds would be $6.00 (10 pounds times 60¢). Dollar Estimate of the cost of your move under the 60-cents option:

$ X ______________________ (to be provided by carrier)

COMPLETE THIS PART ONLY if you wish to WAIVE the Full (Replacement) Level of Protection included in the higher cost estimate provided (above) (on the prior page) for your shipment and instead select the LOWER Released Value of 60 Cents Per Pound Per Article; to do so you must initial and sign on the lines below – I wish to Release My Shipment to a Maximum Value of 60 Cents per Pound per Article.

I acknowledge that for my shipment I have: 1) WAIVED the Full (Replacement) Level of protection for which I have received an estimate of charges; and 2) received a copy of the "Your Rights and Responsibilities When You Move" brochure explaining these provisions.

X X [signature] (Customer's Signature & Date)

DOCUMENTS: I hereby declare that I have received the publications Ready to Move, Claim Filing & Arbitration Program information, Tariff availability Method of Conversion, and removed Weighing of the [illegible]

Customer's Signature X X [signature] Date 8-6-24

PICK UP ACKNOWLEDGEMENT: I, the customer / representative, hereby declare that I have the full authority to enter into this agreement with the carrier / its agents and that I will be responsible severally or jointly for the charges applied and listed above. I understand that all pick up acknowledgement charges are based on the actual weight or space occupied by my shipment. I agree and accept the charges as listed above.

X Customer's Signature [signature] Date 8-6-24

Carrier's Signature [signature] Date 8-6-24

## Services / Charges

| Services | | | Charges |
|---|---|---|---|
| Lbs.@$ | 2900 Cu. Ft.@$ 3.75 | | $10,875 |
| Fuel Surcharge ~~12%~~ | 9% | | $978.75 |
| Packing Labor & Materials | | | $ |
| Bulky Articles | | | $ |
| Stairs | Origin | Destination | $ |
| Elevator | Origin | Destination | $ |
| Long Carry | Origin | Destination | $ |
| Shuttle | Origin | Destination | $ |
| SIT | Origin | Destination | $ |
| Stg. Handling | Origin | Destination | $ |
| Extra Labor | Origin | Destination | $ |
| ~~Extra Stop~~ Manager discount | ~~Origin~~ | ~~Destination~~ | $ -837.86 |
| ~~Waiting Time / Overnight~~ | ~~Origin~~ | ~~Destination~~ | $1600 |
| Redelivery | | | $2000 |
| Other: Binding Estimate Fee | | | $255 |
| FVP | Value $ | Ded. $ | $ |

TOTAL APPLICABLE CHARGES $14,870.89

TARIFF DISCOUNTS $

PREPAID DEPOSIT $4435.89

BILL OF LADING RECEIPT ACKNOWLEDGEMENT: BILL OF LADING RECEIPT ACKNOWLEDGEMENT I, the customer, hereby declare that I have received a copy of this Bill of Lading as required by law, I read, understand and agree to the terms as presented on this contract. I understand that I have up to 3 days from the date of this acknowledgement to cancel my move without penalty. Cancellation after this date must be in accordance with the cancellation policy as detailed on the back thereof.

X Customer Signature [signature] Date 8-6-24

Carrier's (Driver) [signature] Date 8-6-24

CC, Cashier's ck, Personal ck, PMO, Cash, App, Wire Transfer

ORIGIN PAYMENT $2180

BALANCE DUE AT DESTINATION $2255 [illegible]

PMO, Cash, App

PRICE ADJUSTMENTS $

DESTINATION PAYMENT $

BALANCE DUE TO CARRIER WITHIN 30 DAYS $

DELIVERY ACKNOWLEDGEMENT: I, the customer / representative, hereby declare that I have the authority to enter into this agreement with the carrier / its agents. All services ordered have been performed and all goods are received in apparently good condition except as noted on the inventory sheets conducted for my move.

Customer Signature Date

Carrier's (Driver) Date

Page# | No. of Pgs:
TAG-LOT#
TAG Color
Pick-Up Date

Lot # 1
Order # V6237246

# HOUSEHOLD GOODS DESCRIPTIVE INVENTORY

**Origin Information**
Customer Name: Brice Wilkerson
Address: 2331 Rockwood
City: Baldwin NY 11510

**Destination Information**
Customer Name: Brice Wilkerson
Address: 5409 Seahurst Ave
City: Everett 980 A 98203

NOTE: THE OMISSION OF THESE SYMBOLS INDICATES GOOD CONDITION EXCEPT FOR NORMAL WEAR

| ITEM DESCRIPTION | CONDITION AT ORIGIN | CONDITION AT DESTINATION | DELIVERY CHECK |
|---|---|---|---|
| Sofa peace 1 | | | |
| Sofa peace 2 | | | |
| Sofa peace 3 | | | |
| Box | | | |
| Box | | | |
| Bin | | | |
| Bin | | | |
| Bin | | | |
| Box | | | |
| Box | | | |
| Bin | | | |
| Bucket | | | |
| Bucket | | | |
| Bucket | | | |
| Bucket | | | |
| Fridge | | | |
| Dog Drier | | | |
| Carpet Cleaner | | | |
| Dog Tube | | | |
| Pizza Oven | | | |
| bin | | | |
| bin | | | |
| Bin | | | |
| Bin | | | |
| Bin | | | |
| Air frier | | | |
| Steam oven | | | |
| Expreso Machine | | | |
| Frother | | | |
| Blender | | | |
| Stem mixer | | | |
| Shelf 4 peaces | | | |
| Shelf 4 peaces | | | |
| Shelf 4 peaces | | | |
| Shelf 4 peaces | | | |
| Shelf sticks | | | |
| bin | | | |
| bin | | | |
| bin | | | |
| bin | | | |

Remarks

THIS IS THE INVENTORY AND DESCRIPTION OF THIS SHIPMENT AT ORIGIN AND DESTINATION. ALL CLAIMS FOR LOSS OR EXTERIOR DAMAGE ARE TO BE SUPPORTED BY EXCEPTIONS NOTED ABOVE.
"WE HAVE CHECKED ALL ITEMS LISTED ABOVE AND ACKNOWLEDGE THAT THIS IS A TRUE AND COMPLETE LIST OF THE GOODS TENDERED AND AS OF THE STATE OF THE GOODS RECEIVED"
WARNING — BEFORE SIGNING – CHECK SHIPMENT COUNT ITEMS AND DESCRIBE LOSS AND DAMAGE IN THE SPACE ON THE RIGHT ABOVE.

**Origin**
Carrier's Signature [signature] Date 8-6-24
Customer's Signature X [signature] Date 8-6-24

**Destination**
Carrier's Signature Date
Customer's Signature Date

FORM BY: CSI WWW.CSIPROS.ORG 2022 77-CSI-CLAIM (772) 742-5246 © 2024

FORM NO. 274 DI 1 Rev. 06/19

Page #: No. of Pgs

TAG-LOT #:

TAG-Color:

Pick-Up Date:

# HOUSEHOLD GOODS DESCRIPTIVE INVENTORY

Origin Information | Destination Information

Customer Name | Customer Name

Address | Address

City | State | Zip Code | City | State | Zip Code

Exception Symbols | Location Symbols

NOTE: THE OMISSION OF THESE SYMBOLS INDICATES GOOD CONDITION EXCEPT FOR NORMAL WEAR.

| ITEM # | ITEM DESCRIPTION | CONDITION AT ORIGIN | CONDITION AT DESTINATION | DELIVERY CHECK |
|---|---|---|---|---|
| | bin | | | |
| | bin | | | |
| | bin | | | |
| | bin | | | |
| | bin | | | |
| | bin | | | |
| | bin | | | |
| | bin | | | |
| | bin | | | |
| | bin | | | |
| | bin | | | |
| | bin | | | |
| | bin | | | |
| | bin | | | |
| | bin | | | |
| | bin | | | |
| | Camping bag | | | |
| | bag | | | |
| | box | | | |
| | box | | | |
| | box | | | |
| | box | | | |
| | box | | | |
| | box | | | |
| | box | | | |
| | Suit case | | | |
| | Suit case | | | |
| | snow board | | | |
| | box | | | |
| | box | | | |
| | box | | | |
| | box | | | |
| | yellow bin | | | |
| | yellow bin | | | |
| | box | | | |
| | box | | | |
| | wardrove | | | |
| | wardrove | | | |

Remarks

WARNING

Origin: Carrier's Signature / Customer's Signature / Date / Date

Destination: Carrier's Signature / Customer's Signature / Date / Date

FORM BY: CSI WWW.CSIPROS.ORG 2023 77-CSI-CLAIM (772) 742-5246 © 2024

FORM NO. 274-04-19Rev. 06/19

Page # No. of Pgs:
TAG LOT #
TAG Color
Pick Up Date

# HOUSEHOLD GOODS DESCRIPTIVE INVENTORY

Origin Information | Destination Information

Customer Name | Customer Name
Address | Address
City | State | Zip Code | City | State | Zip Code

Description Symbols | Exception Symbols | Location Symbols

NOTE: THE OMISSION OF THESE SYMBOLS INDICATES GOOD CONDITION EXCEPT FOR NORMAL WEAR.

| ITEM # | IN | OUT | ITEM DESCRIPTION | CONDITION AT ORIGIN | CONDITION AT DESTINATION | DELIVERY CHECK |
|---|---|---|---|---|---|---|
| | | | Box | | | |
| | | | Box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | Box | | | |
| | | | Table legs | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | ~~[illegible]~~ Stool | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |

Remarks

WE HAVE CHECKED ALL ITEMS LISTED ABOVE AND ACKNOWLEDGE THAT THIS IS A TRUE AND COMPLETE LIST OF THE GOODS TENDERED AND AS OF THE STATE OF THE GOODS RECEIVED.

WARNING — BEFORE SIGNING – CHECK SHIPMENT. COUNT ITEMS AND DESCRIBE LOSS AND DAMAGE IN THE SPACE ON THE RIGHT ABOVE.

Origin | Destination
Carrier's Signature | Date | Carrier's Signature | Date
Customer's Signature | Date | Customer's Signature | Date

FORM BY CSI WWW.CSIPROS.ORG 2022 77-CSI-CLAIM (772) 742-5246 © 2024

Page#: No. of Pgs:
TAG-LOT#:
TAG-Color:
Pick-Up Date:

US DOT #
Vin #
Order #

Wilmington, NC 28412

# HOUSEHOLD GOODS DESCRIPTIVE INVENTORY

| Origin Information | Destination Information |
|---|---|
| Customer Name | Customer Name |
| Address | Address |
| City State Zip Code | City State Zip Code |

Descriptive Symbols — Exception Symbols — Location Symbols

NOTE: THE OMISSION OF THESE SYMBOLS INDICATES GOOD CONDITION EXCEPT FOR NORMAL WEAR

| ITEM # | IN | OUT | ITEM DESCRIPTION | CONDITION AT ORIGIN | CONDITION AT DESTINATION | DELIVERY CHECK |
|---|---|---|---|---|---|---|
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | bin | | | |
| | | | bin | | | |
| | | | bin | | | |
| | | | bin | | | |
| | | | bin | | | |
| | | | bin | | | |
| | | | bin | | | |
| | | | bin | | | |
| | | | bin | | | |
| | | | bin | | | |
| | | | bin | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |

Remarks

"WE HAVE CHECKED ALL ITEMS LISTED ABOVE AND ACKNOWLEDGE THAT THIS IS A TRUE AND COMPLETE LIST OF THE GOODS TENDERED AND AS OF THE STATE OF THE GOODS RECEIVED"

WARNING ⟶ BEFORE SIGNING - CHECK SHIPMENT COUNT ITEMS AND DESCRIBE LOSS AND DAMAGE IN THE SPACE ON THE RIGHT ABOVE.

| Origin | | Destination | |
|---|---|---|---|
| Carrier's Signature | Date | Carrier's Signature | Date |
| Customer's Signature | Date | Customer's Signature | Date |

FORM BY: CSI WWW.CSIPROS.ORG 2022 77-CSI-CLAIM (772) 742-5246 © 2024

FORM NO. 274

Swift Moving Services LLC | 4851 Carolina Beach Road, Wilmington, NC 28412
Tel (653) 904-8471 | Email contact@swiftmovingservice.co | swiftmovingservice.co

# HOUSEHOLD GOODS DESCRIPTIVE INVENTORY

ICC/MC #: 1590691

Van #:

Order #:

Page #: No. of Pgs:

TAG-Color:

Pick-Up-Date:

| Origin Information | | | Destination Information | | |
|---|---|---|---|---|---|
| Customer Name | | | Customer Name | | |
| Address | | | Address | | |
| City | State | Zip Code | City | State | Zip Code |

Description Symbols — Exception Symbols — Location Symbols

NOTE: THE OMISSION OF THESE SYMBOLS INDICATES GOOD CONDITION EXCEPT FOR NORMAL WEAR

| ITEM # | IN | OUT | ITEM DESCRIPTION | CONDITION AT ORIGIN | CONDITION AT DESTINATION | DELIVERY CHECK |
|---|---|---|---|---|---|---|
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | BOX | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | Beding | | | |
| | | | Beding | | | |
| | | | Beding | | | |
| | | | Beding | | | |
| | | | Beding bag | | | |
| | | | Beding bag | | | |
| | | | Beding bag | | | |
| | | | Mattres box | | | |
| | | | bin | | | |
| | | | head board | | | |
| | | | foot board | | | |
| | | | sides | | | |
| | | | bed frame | | | |
| | | | wood support for bed | | | |
| | | | desk | | | |
| | | | table Long | | | |
| | | | vacum | | | |
| | | | Mop Electric | | | |
| | | | Mop Electric | | | |
| | | | Vacum | | | |
| | | | Dog cage | | | |
| | | | Dog cage | | | |
| | | | Dog cage | | | |
| | | | Hanger | | | |
| | | | box drier | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |
| | | | box | | | |

Remarks

THIS IS THE INVENTORY AND DESCRIPTION OF THIS SHIPMENT AT ORIGIN AND DESTINATION. ALL CLAIMS FOR LOSS OR EXTERIOR DAMAGE ARE TO BE SUPPORTED BY EXCEPTIONS NOTED ABOVE.
"WE HAVE CHECKED ALL ITEMS LISTED ABOVE AND ACKNOWLEDGE THAT THIS IS A TRUE AND COMPLETE LIST OF THE GOODS TENDERED AND AS OF THE STATE OF THE GOODS RECEIVED"

WARNING: BEFORE SIGNING - CHECK SHIPMENT. COUNT ITEMS AND DESCRIBE LOSS AND DAMAGE IN THE SPACE ON THE RIGHT ABOVE.

| Origin | | Destination | |
|---|---|---|---|
| Carrier's Signature | Date | Carrier's Signature | Date |
| Customer's Signature | Date | Customer's Signature | Date |

FORM BY: CSI WWW.CSIPROS.ORG 2022 77-CSI-CLAIM (772) 742-5246 © 2024

FORM NO. 274 01-19 Rev. 06/19

# Exhibit D

Guardwize
INSURANCE AGENCY

MOVING INSURANCE
BY INSURMEDIX BROKERS

| | |
|---|---|
| Nov 04, 2024<br><br>Brice Wilkerson<br>5409 Seahurst Ave.<br>Everett, WA 98203 | **Claim ID :** 198-2001<br>**S/O No.**:V6237246<br>**Coverage** : Full Value (Replacement) Insurance<br>**Policy No. :** MOV012400161 |

## Subject: Settlement Offer for your Moving Insurance Claim

Dear Brice Wilkerson,

This letter is provided in response to your pending claim for loss, damage arising out of your relocation under the carrier / interlining agent SWIFT MOVING SERVICES LLC. Claim ID / Number noted above.

We have now completed a review of your claim and are prepared to address it.

### Loss

| Item # 1 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item # 2 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item # 3 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item # 4 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item # 5 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item # 6 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item # 7 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item # 8 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item # 9 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item # 10 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item # 11 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item # 12 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item # 13 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item # 14 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #15 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #16 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #17 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #18 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #19 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #20 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #21 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #22 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #23 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #24 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #25 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #26 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #27 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #28 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #29 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #30 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #31 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #32 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #33 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #34 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #35 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #36 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #37 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #38 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #39 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 4.5-6.0 | | Description<br>Per the terms of your policy as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #40 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #41 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #42 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #43 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #44 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$200.00 | | Comp Amount<br>$0.00 |

| Item #45 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$200.00 | | Comp Amount<br>$0.00 |

| Item #46 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$200.00 | | Comp Amount<br>$0.00 |

| Item #47 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #48 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #49 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #50 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #51 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #52 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #53 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #54 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #55 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #56 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #57 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #58 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #59 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #60 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TOTE W/CONTENTS M (18 Gal Est.) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$300.00 | | Comp Amount<br>$0.00 |

| Item #61 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>OTHER | | Description<br>Vacuum pack plastic bag- After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$249.47 | | Comp Amount<br>$0.00 |

| Item #62 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>OTHER | | Description<br>Vacuum pack plastic bag- After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$249.47 | | Comp Amount<br>$0.00 |

| Item #63 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>OTHER | | Description<br>Vacuum pack plastic bag- After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$249.47 | | Comp Amount<br>$0.00 |

| Item #64 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>OTHER | | Description<br>Vacuum pack plastic bag- After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$249.47 | | Comp Amount<br>$0.00 |

| Item #65 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>OTHER | | Description<br>Vacuum pack plastic bag- After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$249.47 | | Comp Amount<br>$0.00 |

| Item #66 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>VACUUM CLEANER | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$362.66 | | Comp Amount<br>$0.00 |

| Item #67 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>SHELVES, PLASTIC (EACH) | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$1,436.39 | | Comp Amount<br>$0.00 |

| Item #68 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>BAR STOOL | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$71.42 | | Comp Amount<br>$0.00 |

| Item #69 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>VACUUM CLEANER | | Description<br>Carpet Cleaner - After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. Any and all changes to your policy should have been made up to 24 hours prior to your move. The item claimed has been added to the policy after the move. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$135.83 | | Comp Amount<br>$0.00 |

| Item #70 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>DOG HOUSE, MEDIUM | | Description<br>Dog Bath - Per your policy's terms as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$170.54 | | Comp Amount<br>$0.00 |

| Item #71 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>TABLE, COFFEE | | Description<br>Per your policy's terms as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$1052.84 | | Comp Amount<br>$0.00 |

| Item #72 | Inv # | Settlement<br>No Exceptions at Time of Delivery (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Blender - Per your policy's terms as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$297.89 | | Comp Amount<br>$0.00 |

## Damage

| Item #1 | Inv # | Settlement<br>Per Insured Value (Ins) |
|---|---|---|
| Item name<br>SOFA-3 SEAT/BED | | Description<br>A review of your policy revealed that the insured value for this item is limited to $1812.26. According to the Terms & Conditions, the maximum compensation per item is restricted to its insured value as stated in the policy. This limit is intended to provide financial protection up to the specified amount, covering eligible claims effectively and ensuring adequate compensation for your losses. Therefore, the amount offered for this item is the maximum compensation we can provide for your claim. |
| Amount Claimed<br>$1,812.26 | | Comp Amount<br>$1,812.26 |

| Item #2 | Inv # | Settlement<br>Per Policy Limit (Ins) |
|---|---|---|
| Item name<br>REFRIGERATOR, OVER 20 CU | | Description<br>The compensation for each item is determined by the maximum insured value, as listed for each item listed in your policy. Your total policy limit is capped at $203.99, as specified in your policy. Any applicable deductible will be subtracted from the compensation amount. |
| Amount Claimed<br>$250.00 | | Comp Amount<br>$203.99 |

| Item #3 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>OTHER | | Description<br>Air Fryer- Per your policy's terms as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$50.00 | | Comp Amount<br>$0.00 |

| Item #4 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>MICROWAVE, OVEN | | Description<br>Steam Oven - Per your policy's terms as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$329.00 | | Comp Amount<br>$0.00 |

| Item #5 | Inv # | Settlement<br>Per Insured Value (Ins) |
|---|---|---|
| Item name<br>DESK, OFFICE | | Description<br>A review of your policy revealed that the insured value for this item is limited to $43.99. According to the Terms & Conditions, the maximum compensation per item is restricted to its insured value as stated in the policy. This limit is intended to provide financial protection up to the specified amount, covering eligible claims effectively and ensuring adequate compensation for your losses. Therefore, the amount offered for this item is the maximum compensation we can provide for your claim. |
| Amount Claimed<br>$275.00 | | Comp Amount<br>$43.99 |

| Item #6 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>SNOW BOARD | | Description<br>Per your policy's terms as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$50.00 | | Comp Amount<br>$0.00 |

| Item #7 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>TABLE, UTILITY | | Description<br>Custom table- Per your policy's terms as detailed in Section I - Insuring Agreement Part B. Coverage Conditions - Paragraph (5) Missing Items, will not be covered unless the item is listed in the Valued Inventory and its absence is noted on delivery records signed by all parties. The review of the Inventory Sheets reveals that no notations of the absence of the item were made to indicate that it was missing upon delivery. Therefore, we must respectfully decline this portion of your claim. After reviewing your claim, we have determined that the item in question was not listed as an insured item under your policy. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$225.00 | | Comp Amount<br>$0.00 |

| Item #8 | Inv # | Settlement<br>Cash Allowance Replacement Cost (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>We have identified the item in question, valued at $63.74 on the following website: https://cutt.ly/ceDD4lyc. We utilized this trusted website to confirm the item's value, ensuring our offer aligns precisely with its current cost assessment. This approach guarantees transparency and accuracy in our compensation offer. |
| Amount Claimed<br>$63.74 | | Comp Amount<br>$63.74 |

| | | |
|---|---|---|
| Item #9 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$15.00 | | Comp Amount<br>$15.00 |

| | | |
|---|---|---|
| Item #10 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$50.00 | | Comp Amount<br>$50.00 |

| | | |
|---|---|---|
| Item #11 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$25.00 | | Comp Amount<br>$25.00 |

| | | |
|---|---|---|
| Item #12 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$10.00 | | Comp Amount<br>$10.00 |

| | | |
|---|---|---|
| Item #13 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$7.00 | | Comp Amount<br>$7.00 |

| | | |
|---|---|---|
| Item #14 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$10.00 | | Comp Amount<br>$10.00 |

| | | |
|---|---|---|
| Item #15 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$25.28 | | Comp Amount<br>$25.28 |

| | | |
|---|---|---|
| Item #16 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$25.00 | | Comp Amount<br>$25.00 |

| Item #17 | Inv # | Settlement<br>Missing Info (Loss / Damage) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>Pet Remains - We are very sorry for your loss but are unable to offer any coverage for this damage since no specific amount was claimed. Items with specific claimed amounts will not be offered compensation. |
| Amount Claimed<br>$0.00 | | Comp Amount<br>$0.00 |

| Item #18 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$15.00 | | Comp Amount<br>$15.00 |

| Item #19 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$15.00 | | Comp Amount<br>$15.00 |

| Item #21 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$20.00 | | Comp Amount<br>$20.00 |

| Item #21 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$15.00 | | Comp Amount<br>$15.00 |

| Item #22 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 6.0-6.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$5.00 | | Comp Amount<br>$5.00 |

| Item #23 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 6.0-6.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$3.00 | | Comp Amount<br>$3.00 |

| Item #24 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 6.0-6.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$4.00 | | Comp Amount<br>$4.00 |

| Item #25 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 6.0-6.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$3.00 | | Comp Amount<br>$3.00 |

| Item #26 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 6.0-6.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$7.00 | | Comp Amount<br>$7.00 |

| Item #27 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 6.0-6.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$30.00 | | Comp Amount<br>$30.00 |

| Item #28 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 6.0-6.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$15.00 | | Comp Amount<br>$15.00 |

| Item #29 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 6.0-6.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$7.00 | | Comp Amount<br>$7.00 |

| Item #30 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 6.0-6.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$10.00 | | Comp Amount<br>$10.00 |

| Item #31 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 6.0-6.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$20.00 | | Comp Amount<br>$20.00 |

| Item #32 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, LARGE 6.0-6.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$4.00 | | Comp Amount<br>$4.00 |

| Item #33 | Inv # | Settlement<br>Picture Doesn't Support Claim |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>The provided photo does not sufficiently demonstrate the claimed damage and does not support this part of your claim. Although the item in question is unassembled, there is no visible damage. We could not confirm any damage or determine that the claimed issue is transit-related or due to carrier negligence. Therefore, we must respectfully decline this portion of your claim. |
| Amount Claimed<br>$80.00 | | Comp Amount<br>$0.00 |

| Item #34 | Inv # | Settlement<br>Per Policy Limit (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>The compensation for each item is determined by the maximum insured value, as listed for each item listed in your policy. Your total policy limit is capped at $116.44, as specified in your policy. Any applicable deductible will be subtracted from the compensation amount. |
| Amount Claimed<br>$3,983.69 | | Comp Amount<br>$116.44 |

| Item #35 | Inv # | Settlement<br>Item Not Covered by Policy (Ins) |
|---|---|---|
| Item name<br>MICROWAVE, OVEN | | Description<br>After reviewing your claim, we have determined that the item in question was not listed as insured item under your policy. As such, we are unable to offer any compensation for items not covered by your policy. Therefore, this portion of your claim is respectfully declined. |
| Amount Claimed<br>$80.00 | | Comp Amount<br>$0.00 |

| Item #36 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BED, QUEEN - BEDSTEAD (Headboard, Footboard, Rails) | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$55.00 | | Comp Amount<br>$55.00 |

| Item #37 | Inv # | Settlement<br>Cash Allowance As Claimed (Ins) |
|---|---|---|
| Item name<br>BOX, MEDIUM 3.0-4.5 | | Description<br>The compensation for this item is based directly on your claimed amount, as you have asserted in your claim. |
| Amount Claimed<br>$90.00 | | Comp Amount<br>$90.00 |
| TOTAL SETTLEMENT: | | $2,725.70 |

## Additional charges & deductions

| | |
|---|---|
| FVP PREMIUM CHARGE:<br>Per the policy issued on 08/05/2024 the premium to be charged was $852.32. To date you have only paid $511.00. Therefore, the remaining $341.32 is now deducted from your settlement amount. | -$341.32 |
| APPLICABLE DEDUCTIBLE: | -$1,500.00 |
| TOTAL COMPENSATION AMOUNT: | $884.38 |

Nov 04, 2024

Brice Wilkerson
5409 Seahurst Ave.
Everett, WA 98203

**Claim ID :** 198-2001
**S/O No.**: V6237246
**Coverage** : Full Value (Replacement) Insurance
**Policy No. :** MOV012400161

## Release Form

In consideration of satisfactory settlement in the amount of $884.38, which is now acknowledged, I hereby release and forever discharge

### Insurmedix Brokers Inc

and its agents from any and all future claims, lawsuits, complaints of whatsoever nature. This release particularly refers to Policy No. MOV012400161 for moving:

From: 2331 Rockwood Ave.,
Baldwin, NY

To: 5409 Seahurst Ave.,
Everett, WA, 98203

Complete and satisfactory settlement of which is now acknowledged.

Customer: **Brice Wilkerson**

_______________________________ Signature

_______________________________ Date

Insurmedix will mail the check to the following address:

Brice Wilkerson
5409 Seahurst Ave.
Everett, WA 98203

If you wish to change the mailing address, please fill out the address below:

Mailing Address _______________________________

_______________________________

City _______________ State _______ ZIP _______________